GENERAL MOTORS ACCEPTANCE
CORPORATION, Plaintiff,

v.

Larry MILLER, Defendant.

In the Matter of Larry MILLER, Debtor.

Bankruptcy No. 3-80-02804.
Adv. No. 3-80-0573.

United States Bankruptcy Court,
S. D. Ohio,
Western Division.
March 6, 1981.

Mary K. C. Soter, Dayton, Ohio, for defendant.

Daniel A. Nagle, Kettering, Ohio, for plaintiff.

George Ledford, Englewood, Ohio, Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

Plaintiff, General Motors Acceptance Corporation (GMAC) filed a complaint against Larry Miller on 3 October 1980 seeking possession and authority to sell collateral because the installment sales contract is in default and the Chapter 13 proposed Plan "fails to provide the then present value of the Plaintiff's claim, in that the Plan fails to capitalize the deferred payments proposed to be distributed under the Plan into an equivalent capital sum as of the effective date of the Plan."

Larry Miller filed an Answer and Counter Claim on 13 November 1980 seeking a return of the collateral and an order that

Plaintiffs "be cited and fined as punishment for its violation of the stay."

Plaintiff filed an answer on 18 November 1980 and the matter was submitted on the pleadings and the evidence adduced at the trial on January 26, 1981.

No briefs or legal citations were filed by either party.

## FINDINGS OF FACT

Larry Miller filed a case under Chapter 13, on 10 September 1980. The hearing on confirmation of the proposed Plan was continued pending disposition of adversarial proceedings, and an order to commence interim payments was entered on 23 December 1980.

On 29 September 1980 Plaintiff received the official notice of the filing and of the automatic stay.

Previously, GMAC had taken possession of the collateral (a 1979 Buick automobile) and immediately gave notice of repossession and redemption rights to Miller on 20 September 1980, fixing a sale date as 20 October 1980. The title to the vehicle was transferred of record to GMAC on September 20. After receiving the court notice, the sale was cancelled. The attorney for GMAC attended the meeting of creditors held on 9 October 1980.

The wife of debtor testified that she had telephoned the office of GMAC before the repossession, but she did not recall the date. She talked to "some lady" but did not know her capacity or give the Chapter 13 number. The testimony by GMAC witnesses explained that under established office procedures the company heeds only such calls from attorneys for debtors and, furthermore, no record of such a call was ever noted by any staff member (16 persons handle telephone calls).

The last payment by Miller to GMAC under the security agreement was a check dated August 29, 1980 in the amount of $236.32, returned by the Bank for insufficient funds just a few days before the Chapter 13 case was instituted. The last Bank stamp on the check was September 8 and the Chapter 13 petition was signed on September 9.

Prior to repossession, attempts by GMAC to reach debtor by telephone were unsuccessful. Their records show the telephone as disconnected or unlisted. On the date of repossession, the occupants at the home of Debtor refused to come to the door.

By written notice under date of 6 November 1980, the attorney advised the Chapter 13 Trustee that the request to return the vehicle would be honored as soon as the Plan had been confirmed.

No evidence has been submitted as to the valuation of the collateral or the "value" under the proposed plan, challenged by the complaint, other than the court record judicially noticed by agreement of the parties.

## CONCLUSION OF LAW

This litigation will be rationalized and resolved upon the analysis and rationale of the decision by this court in *The Springfield Bank v. Caserta,* 10 B.R. 57.

█ Insufficient proof to establish a willful violation of the court jurisdiction and of the automatic stay provisions of 11 U.S.C. § 362(a) and 11 U.S.C. § 1306(b) has been submitted. The telephone call made by the wife of Debtor is too tenuous to establish a duty to check the court records before taking action to seize the collateral. It is not unreasonable to believe that the attorney for Debtor should have handled the assertion of the Debtor's legal rights stemming from the Chapter 13 case. There should have been a concerted effort to contact the attorney for GMAC. Obviously, a failure to heed a vague telephone call did not put GMAC on sufficient notice of the specific court case to render action taken for protection of its collateral as a willful and flagrant violation of the automatic stay.

The fact that GMAC immediately cancelled the impending sale of the collateral, when more properly apprised of the stay order, negates any willful or wanton disregard of the court jurisdiction over the estate and the stay order.

Such facts in no manner rectify the illegal possession by GMAC as the result of a void act and trespass *ab initio.*

The absence of willfulness, nevertheless, in equity countenances a mitigation of the

amount of damages in light of extenuating circumstances. It is noted that the Debtor was chronically in default of installment payments under the security agreement.

█ The first mitigating factor is the failure of the attorney for Miller actively to prosecute his rights immediately following the Chapter 13 filing and the void seizure of the collateral. A reasonable attorney's fee for litigating the trespass and consequent damages would be $400.00. This amount is reduced by $150.00 in mitigation for the attorney's neglect to effect an early resolution of the void seizure by contacting the attorney for GMAC as soon as the bankruptcy court jurisdiction attached, rather than leaving such a complicated problem to the Debtor to resolve.

█ The failure of GMAC conscientiously to mitigate damages for the trespass, however, cannot be lightly overlooked. We observe, nevertheless, that the complaint in this litigation was filed on 3 October 1980. The time ensuing since that date was consumed in the litigation process. It is difficult to believe that storage of the vehicle is any more inequitable than would have been continued possession and use by the debtor who was and would be making no payments on the security agreement during the interim. The conditions of the market place should not always render a creditor in such a case as a villain and the eternal *bete noire*. As a device to balance the equities, the security agreement should draw no debt service charges for the period between the date of the illegal seizure (20 September 1980) and the date possession is returned to Miller. However, until a Plan has been confirmed, GMAC may retain possession.

*ORDERED, ADJUDGED AND DE-CREED* that punitive sanctions for contempt of court be denied for the violation of the stay order in such cases made and provided.

*ORDERED, ADJUDGED AND DE-CREED* that General Motors Acceptance Corporation pay the attorney's fee for the services rendered as a consequence of the void seizure of 1979 Buick motor vehicle, in the amount of $250.00.

*ORDERED, ADJUDGED AND DE-CREED* that title and possession should be, and is hereby restored to Larry Miller forthwith upon confirmation herein of a Plan for adjustment of debts.

*ORDERED, ADJUDGED AND DE-CREED* that no debt service charge be assessed for the period from the date of September 10, 1980 until possession of the vehicle has been restored to Larry Miller.

*ORDERED, ADJUDGED AND DE-CREED* that General Motors Acceptance Corporation should be, and is hereby enjoined from disposing of the collateral until further order herein.