**In re Timothy V. NEWELL d.b.a. Newell Lumber Co., Debtor.**

**Bankruptcy No. 2–89–05117.**

United States Bankruptcy Court, S.D. Ohio, E.D.

April 30, 1990.

**324**

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Robert M. Hoskinson, Columbus, Ohio, for Debtor.

David Whittaker, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, for Caterpillar Financial Services.

Charles M. Caldwell, Columbus, Ohio, Office of the U.S. Trustee.

## OPINION AND ORDER ON DEBTOR'S MOTION FOR SANCTIONS OR A FINDING OF CONTEMPT AGAINST CATERPILLAR FINANCIAL SERVICES

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon a motion filed on behalf of Timothy V. Newell, the debtor in a pending Chapter 13 case. The motion seeks to have Caterpillar Financial Services ("CFS") held in contempt and sanctioned for willful violation of the automatic stay. The motion was opposed by CFS and was heard by Judge Calhoun. Because there are no disputed facts, the opinion and order are being issued by the bankruptcy judge assigned to the case.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference previously entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) which this bankruptcy judge may hear and determine.

The facts in this matter are essentially undisputed. The debtor filed a petition under Chapter 13 of the Bankruptcy Code on September 13, 1989. CFS was listed as a creditor holding a security interest in certain equipment used by the debtor in its business. CFS was notified of the bankruptcy filing and appeared at the meeting of creditors through its counsel. On November 27, 1989 the debtor's plan was confirmed with CFS' debt to be paid through the Chapter 13 trustee.

On February 5, 1990 CFS mailed an invoice directly to the debtor. That invoice requested payment not only of the original note, but also of attorney fees incurred by CFS in the Chapter 13 proceeding. On March 5, 1990 a second invoice was also mailed to the debtor. The second invoice requested repayment only of the amount due on the note.

Upon receipt of the February 5, 1990 billing the debtor attempted to contact his attorney. That contact was not successful until March 7, 1990 and by that time, the second invoice apparently had also been received. The debtor's attorney chose not to contact CFS or its attorney about the problem, but instead filed the motion which is currently before the Court.

The debtor argues that CFS' actions were willful violations of the automatic stay which require the Court to award the debtor his actual damages and punitive damages as allowed by 11 U.S.C. § 362(h). CFS, on the other hand, maintains that its actions were inadvertent and resulted from automatic computerized billing procedures. Those actions ceased immediately upon CFS' receipt of the debtor's motion. CFS also maintains that had the debtor's counsel made it aware of the problem earlier, it would have caused the billings to cease upon notification.

■ The Court finds that Section 362(a)(6) of the Bankruptcy Code clearly prohibits any action by a creditor to collect a prepetition claim during the pendency of a Chapter 13 case and prior to the granting of a discharge to the debtor. CFS' actions in sending the two invoices violated that prohibition. Because CFS had actual notice of the pendency of the Chapter 13 case, its actions are more than technical violations.

An action which violates the automatic stay in more than a technical sense is not necessarily a willful violation, however. The willfulness element must be shown and the burden for such showing is on the debtor. While a showing of willfulness may not require evidence of CFS' actual admission of intent, such showing requires more than establishing that a corporate creditor violated the stay after it had been sent notice of the bankruptcy filing. For a

willful violation susceptible to an award of punitive damages in favor of the debtor, there must be a showing of egregious actions, persistence in the activity after notice of the violation, failure to appear to contest the allegations of intent, or some other fact which at least raises an inference that the creditor is acting knowingly in conscious violation of the stay. No such showing was made in this matter. The inclusion of additional attorney fees in the first invoice does not change that finding. Rather, the evidence and statements of counsel indicate that CFS' actions were inadvertent and would have ceased after the first violation had it received a communication from the debtor or his counsel bringing the computer-generated billing to someone's attention. Therefore, the debtor has not established a willful violation under § 362(h) which would entitle him to an award of punitive damages.

The issue remaining is the extent of actual damages which the Court should award to the debtor as a sanction against CFS for its violation of the automatic stay.

Debtor's counsel argued at some length in opposition to a procedure previously ordered by this Court to address similar violations of the discharge injunction. *See In re Roush*, 88 B.R. 163 (Bankr.S.D.Ohio 1988). In *Roush* the Court stated:

To eliminate a multiplicity of such actions and to attempt to resolve violations of the discharge injunction at a minimum expense to both parties, the Court hereby orders the following settlement procedures to be followed prior to granting a hearing on a contempt motion related to alleged violations of the discharge injunction:

(1) First, debtors must request their attorney to communicate directly with the creditor prior to filing a motion seeking to hold a party in contempt for violation of 11 U.S.C. § 524.

(2) If the communication succeeds and the contemptuous behavior ceases, debtors' attorneys may request an award of attorney fees sufficient to compensate them for the time required for the communication and for preparation of the

application and order allowing the fee award. It is anticipated that such efforts should require no more than one to one and a half hours of an attorney's time.

(3) If the communication is unsuccessful, debtors' attorneys must document their efforts to achieve compliance by affidavit filed with the Court at the time a request is made for hearing on a motion seeking to cite the creditor for contempt. If the contempt motion is sustained, debtors will be awarded their attorney fees, any actual damages caused by the creditor's action or the need to appear in Court and additional compensation for emotional distress in appropriate circumstances.

*Roush*, 88 B.R. at 165.

The debtor's counsel did not follow the *Roush* procedure in this matter and challenges both its relevance and its constitutionality.

The *Roush* case involved the discharge injunction and not the automatic stay. Debtor's counsel was aware, however, from previous proceedings that this Court viewed non-aggravated violations of the automatic stay resulting from the inadvertent issuance of computerized billings in the same light. The reason or basis for the constitutional objection is not clear.

Frankly, the Court views its procedure as an economical way debtors may attain redress for inadvertent violations of the automatic stay or the discharge injunction, in the absence of facts showing a willful or deliberate violation by the offending party. The procedure was also designed to eliminate unnecessary multiplication of damages, as typified in this proceeding. Had debtor's counsel communicated with CFS or its counsel and succeeded in stopping the violations, the debtor could have been compensated for his minimal expenses for two long distance telephone calls and his attorney's limited services. Instead, the debtor has been forced to travel from his work in Tennessee, lose a day's work and incur attorney fees for the preparation of the motion, the hearing presentation and the rather extensive pre-trial brief filed by

his attorney. That brief is devoted in substantial part to legal arguments about why counsel should not have had to contact the offending creditor prior to filing the motion seeking an order finding CFS to be in contempt.

The Court believes its suggestions in *Roush* are good and appropriate lawyering. The Bankruptcy Court is a very busy place and the Court's time and parties' monies should be spent on matters which are of serious consequence to the parties involved. As it relates to stay violations, such seriousness is not necessarily equated to the size of the economic impact of a matter, but may well include emotional trauma visited upon debtors by creditors who refuse to honor either the automatic stay or the discharge injunction, who harass debtors in other inappropriate ways or who demonstrate repetitive noncompliance. This Court will always hear and give serious attention to such allegations. But the unnecessary escalation of a matter of somewhat limited consequence which could have been resolved by much less lawyering does not make economic or emotional sense. Such escalation creates damages, magnifies costs, and burdens the system. More significantly, such efforts reveal a lack of perspective.

Based upon the foregoing, the Court sustains the debtor's motion and finds that Caterpillar Financial Services violated the automatic stay imposed by 11 U.S.C. § 362(a)(6). As a consequence of such violation CFS is ordered to pay the debtor $150.00 as actual costs for two long distance telephone calls and for the reasonable value of legal services which should have been sufficient to resolve this matter in an expeditious manner. No further damages will be awarded.

IT IS SO ORDERED.