**In re Dorothy Jenelle PRICE, Debtor.**

**Bankruptcy No. 93–50570.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Feb. 9, 1995.

Stephen E. Schafer, Columbus, OH, for debtor.

Patricia M. Scanlon, Columbus, OH, for creditor.

Arnold S. White, Chapter 7 Trustee, Columbus, OH.

Alexander G. Barkan, Office of the U.S. Trustee, Columbus, OH.

## MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

This Memorandum Opinion and Order in the case of Dorothy Jenelle Price ("Debtor") is issued pursuant to an Order of the United States District Court entered on October 12, 1994. That Order reversed and remanded a decision rendered on November 17, 1993. For reasons amply expressed in the November 17, 1993, Memorandum, this Court declined to award attorney fees to Debtor's counsel, who had requested compensation in the amount of $572.50 for obtaining a $13.00 judgment against Pediatric Academic Associates, Inc. ("Creditor") for a stay violation.[1]

On remand it is the understanding of this Court that it has been charged with the responsibility of again determining what fees should be awarded Debtor's counsel, aided by a presumption that where there is a finding of a willful stay violation, the filing of a contempt motion, even without making any prior effort to contact the offending party, was necessary and by definition compensable.[2] Where the offending creditor challenges the fee award, it must take on the responsibility of overcoming this presumption. To aid this Court on remand, the District Court has identified three factors that must be considered:

—whether the injury caused and damages incurred, other than attorney fees, only amount to the cost of appearing in court to litigate the contempt motion;

—whether the burden of requiring the Debtor's attorney to notify the Creditor of the violations is insignificant, and

—whether the offending Creditor acted in bad faith.

Even to the extent to which findings are made on these factors that are in favor of the Creditor, the District Court has mandated that fees should be awarded in a amount that would have been incurred if the matter had been resolved in a nonlitigious manner. In accordance with these directions, this Court conducted a hearing on November 8, 1994, at which time testimony of a representative of the Creditor was presented, and the Court heard the statements of counsel.

To provide context for this Court's decision on remand, three observations should be made. First, in the bankruptcy system, despite the best intentions of debtors to give notice and of creditors to cease postpetition collection efforts, violations will occur by virtue of the sheer volume of cases and the near fatal mixture of computer records, form collection correspondence and humans who are

---

1. The finding of a willful stay violation was rendered by a recalled Bankruptcy Judge during the period between the selection and appointment of the undersigned as a U.S. Bankruptcy Judge.

2. The statutory basis for such a presumption is not clear since § 362(h) does not include any separate criteria for the awarding of fees in addition to those expressed in § 330, which limits payment to reasonable compensation for actual, necessary services based on the nature, extent and value of such services. The only mandate clearly expressed in § 362(h) is that upon a finding of a willful violation, the injured party shall recover actual damages, including costs and attorney fees. The author read this mandate to require the assessment of actual damages, including costs and attorney fees, that must be determined by reference to § 330. Indeed, a review of the caselaw reveals a long-standing practice of subjecting compensation in stay violation cases to the same § 330 criteria employed in all other instances; i.e., the time spent, the quality of the services rendered and their value, the result produced, the skill required, and the benefit conferred upon the debtor. *In re Walters*, 41 B.R. 511, 518 (Bankr.W.D.Mo.1984); *In re McLaughlin*, 96 B.R. 554, 563 (Bankr.E.D.Pa. 1989); *In re Still*, 117 B.R. 251, 254 (Bankr. E.D.Tx.1990). The creation of the presumption circumscribes the Court's discretion to employ these criteria and renders to a great extent the filing of fee applications meaningless. It also shifts the focus on appeal from the findings and conclusions reached on the fees to whether there was a willful violation which has by definition already been determined. It should also be noted that in recent amendments to § 330 of the Bankruptcy Code, effective for cases filed on or after October 22, 1994, Congress included greater detail for the criteria to be applied by the Bankruptcy Court in reviewing fees and expressly provided that the Court may on its own award less compensation than requested.

responsible for their maintenance and issuance.

Second, stay and discharge violations range in severity from issuance of dun letters, to phone calls at work, to repossession of assets protected by the stay or discharge provisions. While willful violations should not be countenanced, primarily to ensure that debtors are accorded relief from creditor harassment, it is beyond the realm of reason to conclude that the mailing of collection correspondence for a $62.00 medical bill, as occurred in this case, is of the same magnitude as for example the unauthorized removal of one debtor's garage door by a creditor, as occurred in another case before this Court.

Third, it should be observed that the bankruptcy process is primarily one of consensual resolution of the conflicting interests of creditors and debtors, and accordingly is greatly dependent for its success upon the cooperative efforts of the parties and especially their counsel. If every violation of the respective statutory rights of debtors and creditors were litigated, we would do little else other than manage such litigation, and to what end. All of these realities underlie the provisions in *In re Newell*, 117 B.R. 323, 325 (Bankr. S.D.Ohio 1990) and *In re Roush*, 88 B.R. 163, 165 (Bankr.S.D.Ohio 1988) that respectively urge the employment of informal notifications of stay or discharge violations, prior to instituting litigation.[3]

The wisdom of the pre-notification requirement is demonstrated by a review of the file in the instant case that includes transcripts for four hearings before this Court and numerous pleadings either in support of or in opposition to the imposition of sanctions and the awarding of compensation. It must be surmised that the legal fees on both sides, not to mention the incalculable cost for the time required to adjudicate this dispute at the trial and appellate levels, far exceeds by astronomical proportions the $62.00 medical bill at issue, and the $13.00 in actual damages awarded.

■ Turning to the mandate on remand and the factors identified by the District Court, it is undisputed that the only injury caused and the only damages assessed pertain to attendance by the Debtor at the sanction hearing which resulted in an award of $13.00. Accordingly, it must be concluded that the first factor identified by the District Court has been established.

With reference to the second factor; i.e., the magnitude of the burden upon Debtor's counsel to provide notification to the Creditor prior to filing the motion, the record indicates that Debtor's counsel had been engaged in similar litigation in another case, *Jackie and Mary Price*, 2–92–09168, involving the same Creditor who was represented by the same counsel.[4] Debtor's counsel could very easily have mentioned the instant case to Creditor's counsel before filing a motion; indeed, he and Creditor's counsel were both present at a hearing that lasted several hours on March 23, 1993, in the case of Jackie and Mary Price. The explanation provided is that Debtor's counsel felt, in view of other instances of alleged violations by the Creditor, in order to deter the Creditor the matter must be brought to the attention of the Court. This logic ignores the possibility, especially in view of the other *Price* case, that prior informal contact would have resulted in a cessation of the collection efforts in this case, and indeed, they stopped immediately upon filing of the sanctions motion.[5]

---

3. The *Newell* and *Roush* decisions seek to create a reasonable procedure for the efficient and economical resolution of stay and discharge violations. To the extent to which they require informal notification of a violation prior to suit, they represent commendable efforts to minimize needless and costly conflicts to the detriment of the parties and the Court. To the extent, however, that they have been interpreted as providing guaranteed mechanisms for the assessment of fees, without regard to the severity of the injury to debtors, they become instruments of the very litigious practices they seek to prevent.

4. Debtor's counsel has long been aware of the practice of providing informal notification prior to filing suit, as he represented the debtors in the *Roush* case.

5. It should be noted that in the *Jackie and Mary Price* case, involving collection correspondence from the Creditor in this case, there was ultimately a finding that there was no willful violation and no fees were awarded, which was subsequently affirmed on appeal to the District Court, Case No. C–2–94–073, J. Smith.

Accordingly, this Court concludes that the second factor identified by the District Court has been established.

With reference to the third criteria identified by the District Court; i.e., the bad faith or the lack thereof demonstrated by the Creditor, testimony was presented regarding the collection practices of the Creditor in general and what specifically happened in this case.[6] The testimony elicited causes this Court to find that the Creditor at the time of the violation had procedures in place to cease collection efforts once notice of a bankruptcy filing is received. Specifically, upon receipt of a notice the account is written off, and if it has been referred to a collection agency, oral and written contact is made to have collection efforts stopped. Subsequent to the recent sanction proceedings, the Creditor has increased the rapidity by which it acts upon receipt of a bankruptcy notice.

Regarding the events in this case, testimony was provided that notice was never received. Specifically, the Creditor provided testimony that the address utilized for notices may have contained the wrong ZIP Code. Without modifying the prior finding that this case involved a willful violation, all of the testimony is persuasive to establish that the Creditor's actions were not in bad faith.[7] Without regard to any alleged address problems, there were mechanisms in place to cease collection efforts, and once the litigation was commenced, all collection efforts did cease. This case simply is not an instance of an egregious violation by a recalcitrant creditor who is determined to collect accounts without regard to debtors' statutory rights.

 Having determined that the three factors identified by the District Court are present in this case, it must be determined that any award of fees should be circumscribed to what it would have cost to resolve this matter in a nonlitigious manner. Debtor's counsel was aware that the Creditor was represented by counsel and was engaged in litigation in another case with that counsel. Nonlitigious resolution of this case, indeed, common professional courtesy, would mandate that the violation at least be mentioned to the Creditor's counsel prior to commencing suit. This could have been easily accomplished by telephone, letter, or by mention of the matter before, after, or during the hearings on the other *Price* case being litigated. *In re Houchens*, 85 B.R. 152, 154–55 (Bankr.N.D.Fla. 1988). Utilizing counsel's hourly rate of $150.00 and allowing an increment of one-half hour for a phone call, letter, or brief in-person discussion with Creditor's counsel, this Court has determined that any award of fees should be limited to the sum of $75.00.

This amount is awarded in accordance with the mandate on remand and in order to bring this matter to some conclusion before additional funds are expended. Accordingly, it should not be interpreted as any sanction of the behavior of Debtor's counsel in this case or serve as any indication that it will be tolerated in future cases before the undersigned. As suggested by the District Court, Bankruptcy Rule 9011 sanctions may be imposed in appropriate circumstances. Also, in the future no fees for willful violations will be awarded unless the request is supported by an itemized statement detailing the date, nature of the services and the time expended.

**IT IS SO ORDERED.**

---

**6.** The nature of this testimony required by the third criteria is strikingly similar to that which would normally be elicited to render a finding of whether a willful violation occurred; such a finding was already made in the process of awarding the sum of $13.00 in actual damages.

**7.** It should be noted that the Creditor did not present any testimony at the original sanction hearing because of the time and expense incurred in the case of *Jackie and Mary Price* according to the transcript of the original sanction hearing held on May 24, 1993. Testimony on the issue of receipt of notice and the Creditor's internal procedures may have resulted in a finding that there was no willful violation similar to the conclusion reached in *In re Jackie and Mary Price*, 2–92–09168 (1993), aff'd C–2–94–073 (1994).