**In the Matter Edgardo Ryan RIJOS & Julia E. Cruz Nieves, Debtors.**

No. 98–09043.

United States Bankruptcy Court, D. Puerto Rico.

April 5, 2001.

Irving K. Hernández, Rio Piedras, P.R., for debtors.

Vivian Ortiz Ponce, Cardona–Jiménez Law Office, San Juan, Puerto Rico, Wanda Luna Martínez, Montañez & Alicea Law Offices, Hato Rey, Puerto Rico, for creditors.

## AMENDED OPINION AND ORDER[1]

ENRIQUE S. LAMOUTTE,
Bankruptcy Judge.

This matter comes before the Court on the motions filed by Edgardo Ryan Rijos and Julia Cruz Nieves (hereinafter "the Debtors") alleging that creditors Citibank and Ponce Bank[2] (jointly referred to as "the Creditors") violated the automatic stay provisions of Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a), and that they are entitled to an award of money damages, including costs and attorney's fees and punitive damages pursuant to Section 362(h), 11 U.S.C. § 362(h).

### I. Jurisdiction and Procedure

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b) and 28 U.S.C. § 1334(b). The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) because it concerns the administration of the estate.

### II. Procedural Background

The Court relates the following chronology of events and facts as relevant to the controversy before the Court:

1. On June 30, 1998, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code. The Debtors included the

---

1. On January 1, 2001, the Bankruptcy Appellate Panel for the First Circuit issued an order granting this Court's request to amend its May 2, 2000 Opinion and Order to include a reference to *Fleet Mortgage Group v. Kaneb,* 196 F.3d 265 (1st Cir.1999).

2. Ponce Bank is currently known as Banco Bilbao Vizcaya Puerto Rico. Hereinafter it is referred to as "BBV".

names of the Creditors and their respective addresses in the master list attached to the bankruptcy petition. The Debtors listed Citibank and BBV in the schedules filed on July 13, 1998 as having claims in the amounts of $3,744.24 and $6,299.54, respectively.

2. On July 23, 1998, the Chapter 13 Trustee sent a notification to the Creditors indicating that a meeting of creditors under 11 U.S.C. § 341 would be held on August 14, 1998.

3. On November 5, 1998, the Court confirmed Debtors' Chapter 13 plan.

4. On March 9, 1999, Debtors filed two motions requesting this Court to impose sanctions against BBV and Citibank for willful violation of the automatic stay.

5. On March 15, 1999, this Court ordered the Creditors to show cause within twenty days from notice of the order why sanctions should not be imposed. Said period ended on Monday April 5, 1999 because the expiration date, April 4, fell on a Sunday.

6. On March 30, 1999, Citibank filed a reply to Debtors' motion in accordance with the Court's order.

7. On April 12, 1999, the Debtors filed a motion for partial summary judgment against Citibank alleging that Citibank's actions constituted a willful violation of the stay and that this determination did not require a finding of specific intention but rather a finding of knowledge of the bankruptcy filing. Debtors argued that Citibank's actions constituted a willful violation of the stay and that partial summary judgment should be entered in their favor because Citibank had been notified of the Debtors' petition for bankruptcy before sending the statements requesting payment. The Debtors also requested that actual damages for attorney's fees and cost liability be awarded in their favor and that

an evidentiary hearing be held in order to determine other damages.

8. On April 16, 1999, BBV filed its answer to Debtor's motion requesting sanctions. BBV argues that the alleged collection letter was merely a statement of account, which did not demand payment of the debt or threaten the Debtors with legal collection proceedings. Moreover, BBV argues that Debtors failed to show that BBV sent statements after October 1998 or that it attempted to collect the debt after Debtors filed for bankruptcy. Finally, BBV argues that Debtors did not act in good faith because the alleged situation could have been solved by calling or sending them a letter rather than by filing a motion requesting sanctions.

9. On April 28, 1999, Citibank filed its reply to Debtors' motion for summary judgment. Citibank argues that a genuine issue of fact exists regarding the deliberateness of its actions. According to Citibank, Debtors must prove that its action was willful, deliberate and with the general intention to collect the debt. Citibank further argues that Debtors have not proven that it had the intention to collect the debt or to violate the stay. Moreover, Citibank alleges that Debtors did not establish damages with the particularity required. Hence, Citibank contends that Debtors' motion for summary judgment should be denied.

10. On May 11, 1999, the Debtors filed a reply to BBV's answers to their motion requesting sanctions. The Debtors argues that the statements sent were in fact collection letters, which demanded payment. Moreover, Debtors submitted evidence to demonstrate that BBV continued to send collection letters.

**III. Factual Background**

The Court finds that the following relevant facts are uncontested with respect to each of the creditors:

### Citibank

1. On July 8, 1998, Citibank sent a credit card statement to the Debtors indicating that the balance was $3,711.46 and requesting a minimum payment of $211.00.

2. On August 9, 1998, Citibank sent another statement indicating that the balance was $3,771.72 and requesting a minimum payment of $301.00.

### BBV

3. On August 9, 1998, BBV sent Debtors a credit card statement indicating that the balance on their account was $6,516.91 and requesting a minimum payment of $689.91.

4. On September 9, 1998, BBV sent another statement indicating that their balance was $6,516.91 and requesting a minimum payment of $825.91.

5. On November 9, 1998, BBV sent a similar statement to the Debtors indicating that the balance was $6,516.91 and requesting a minimum payment of $798.91.

6. On December 9, 1998, BBV sent another statement to the Debtors indicating that the balance was $6,516.91 and requesting payment of $907.91.

7. On January 11, 1999, BBV sent a statement to the Debtors requesting the payment of $1016.91.

8. On February 9, 1999, BBV again sent another statement to the Debtors requesting payment of $1,125.91.

### IV. Summary Judgment

The Debtors request this Court to enter partial summary judgment against Citibank for willful violation of the automatic stay. They assert that the facts of this case are uncontested.

Pursuant to Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, the Court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Genuine," in the context of Rule 56(c), means that "the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party...." *Rodríguez–Pinto v. Tirado–Delgado,* 982 F.2d 34, 36 (1st Cir.1993) (internal quotation marks and citations omitted); *Muñiz–Cabrero v. Ruiz,* 23 F.3d 607, 609 (1st Cir.1994). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir. 1994). "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Applying these standards to the instant case, the Court finds that summary judgment is appropriate because the parties have not raised any genuine issues of material facts that need to be tried. Although the Debtors misstated the dates when Citibanks's statements were issued,[3]

---

3. In their motion, the Debtors assert that Citibank sent statements on August 3 and September 3, 1998, while the evidence shows that they were sent on July 8 and August 9, 1998.

an examination of the evidence shows that they were issued post-petition. Thus, the Court finds that no genuine issue of material fact exists and that the only issue that remains undecided involves a question of law.

## V. Controversy

The Court must determine whether the Creditors violated the automatic stay provisions of Section 362(a) by continuing collection efforts of a prepetition debt, and if so, whether or not such violations were willful and thereby warrant an award of money damages, including attorney's fees.

## VI. Discussion

### *Section 362(h) of the Bankruptcy Code*

Section 362(a)(1) of the Bankruptcy Code provides for a stay, applicable to all entities, of the commencement or the continuation of any proceeding against the debtor that was or could have been commenced prior to the bankruptcy, or to recover a claim against the debtor that arose pre-petition. Section 362(a)(6) prohibits "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title". These provisions were designed to give the debtors a breathing space so that they could reorder their economic affairs.

In order to preserve the integrity of the automatic stay provisions and to protect debtors and creditors, Congress enacted a mechanism to address stay violations. Section 362(h) of the Bankruptcy Code provides debtors a cause of action against a party that violates the automatic stay. It states that:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h). Under this provision, a claimant who knowingly attempts to collect or enforce his claim against a debtor or his property without obtaining prior court approval may be liable for damages.

 In a Section 362(h) action, the debtor bears the burden of establishing the following elements by a preponderance of the evidence:

1. that a bankruptcy petition was filed;
2. that the debtors are "individuals" under the automatic stay provision,
3. that the creditors received notice of the petition;
4. that a violation occurred;
5. that the violation was committed willfully; and
6. that the debtor suffered damages.

On the other hand, creditors bear the burden of establishing by a preponderance of the evidence any defenses including:

1. immunities;
2. jurisdiction-denying doctrines; and
3. inapplicability of the stay against the creditors' actions.

*In re Flack*, 239 B.R. 155, 162–63 (Bankr. S.D.Ohio 1999) (citation omitted).[4]

---

4. In *Clayton v. King, et al. (In re Clayton)*, 235 B.R. 801 (Bankr.M.D.N.C.1998), the court explained that "[t]here is some difference of opinion among the courts regarding the proper standard of evidence to be used in an action to impose sanctions under § 362(h). A minority of courts have held that the proper standard is one of clear and convincing evidence. However, the majority of courts rely on the Supreme Court's language in *Grogan v. Garner* for the position that the preponderance of the evidence standard is more appropriate in this context. Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this stan-

In resolving Debtors' motions, the Court applies the factors enumerated above to the case at bar.

First, the Court finds that a bankruptcy petition was filed on June 30, 1998.

Second, the Court finds that the Debtors are "individuals" pursuant to Section 362 of the Bankruptcy Code. *See,* 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 362.11[3], at 362–118.1 – 118.2 (15th ed.1999).

■ Third, the Court finds that the Creditors received notice of the bankruptcy petition on July 23, 1998 when the Chapter 13 Trustee sent a notification for the Section 341 meeting. In making this finding, the Court relies on the presumption of receipt. *See, In the Matter of Robinson,* 228 B.R. 75, 81 (Bankr.E.D.N.Y. 1998) (holding that a debtor may rely on the Court's certificate of mailing to invoke the presumption of receipt). Although the case law suggests that knowledge does not have to come through formal means, *Stucka v. United States (In re Stucka),* 77 B.R. 777 (Bankr.C.D.Cal.1987), the Debtors did not provide any evidence demonstrating that the Creditors knew of the bankruptcy petition prior to July 23.

■ Fourth, the Court finds that both Citibank and BBV violated the automatic stay. Pursuant to Section 362(a), "[a]lmost any postpetition action by a creditor to collect a prepetition debt, enforce a lien, or obtain possession of property from the estate or from the debtor ... constitute[s] a violation of the automatic stay." 1 Keith M. Lundin, *Chapter 13 Bankruptcy* § 3.102, at 3–108 (2nd ed.1994). Accordingly, "[i]t is a violation of the stay for a creditor to make demand for payment of a claim." *Id.,* at 3–109 (citation omitted). A demand for payment includes "even ... simple request that the debtor voluntarily pay or reaffirm prepetition debt in whole or in part" violates the stay. 1 Robert E. Ginsberg & Robert D. Martin, *Ginsberg & Martin on Bankruptcy* § 3.01[c], at 3–16 (4th ed.1998) (citation omitted). In the case of Citibank, the statements sent to the Debtors indicate the account balance and the minimum amount due. They also state: "You must pay at least the minimum payment on or before the payment due date. If the portion of the new balance corresponding to purchases is paid in full on or before the payment due date there will be no FINANCE CHARGE." This Court finds that Citibank's notices constitute an attempt to collect a debt. In the case of BBV, the statements sent to the Debtors indicate the account balance and the minimum amount due. They also provide, in part, the following: "Please remit this invoice with your payment. Write your check payable to PonceBank–Visa"; "Please pay the overdraft amount in order to be able to use your card. When making your payment, call 259–5363 to reactivate your card"; "There will be no charges for financing merchandise and services if total payment of the new balance is received on or before the payment due date." This Court finds that BBV's statements also seek to collect a debt.

■ Fifth, the Court finds that not all of the Creditors' violations were committed willfully. The legislative history does not reveal what Congress intended "willful" to mean in the context of Section 362(h). Courts have adopted two different definitions of the word "willful." *Putnam v. Rymes Heating Oils, Inc. (In re Putnam),* 167 B.R. 737, 740 (Bankr.D.N.H.1994); *Adams v. Hartconn Associates, Inc. (In re*

---

dard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'

Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)." *Id.,* at 806–07, n. 2 (quotations omitted).

*Adams)*, 212 B.R. 703, 708 (Bankr.D.Mass. 1997). The narrower definition "finds a willful violation when 'a deliberate and intentional act [is] done with the knowledge that the act is in violation of the stay.'" *Putnam, supra*, 167 B.R. at 740 (quotation omitted). The broader definition, adopted by the Second, Third, and Ninth Circuits, holds that "a creditor acts willfully if it (1) has knowledge of the petition, and (2) the act which violates the stay was intentional." *Id.* (citation omitted). Similarly, in *Fleet Mortgage Group v. Kaneb*, 196 F.3d 265 (1st Cir.1999), the Court of Appeals for the First Circuit adopted a broad definition of the term 'willful violation' as it is used in Section 362(h). Thus, we hold that a willful violation of the stay, for which damages may be awarded, is "a deliberate and intentional act done with knowledge of the automatic stay or of the bankruptcy filing." Eric C. Surette, *Remedies and Damages for Violation of the Automatic Stay Provisions of the Bankruptcy Code (11 U.S.C.A. § 362(h)), by Parties other than the Federal Government*, 153 A.L.R.Fed. 463, 485 (1999). Therefore, to establish a willful violation, the Debtors must demonstrate that the Creditors intended to commit the acts which were a violation of the stay, while aware of the pendency of the bankruptcy case. *See, In re Adams, supra*, 212 B.R. at 709.

■ In the case of Citibank, the Court finds that it committed a technical violation of the stay with respect to the July 8, 1998 statement because it sent the statement before having been notified of the bankruptcy petition.[5] With respect to the August 9, 1998 statement, the Court finds that Citibank already knew of the petition

because the Trustee had sent it a notification for the Section 341 meeting on July 23, 1998. Citibank argues, nonetheless, that its conduct does not amount to a willful violation of the stay because the computer system automatically issued the letter while a new software was being installed.[6] Citibank argues that although it knew that a bankruptcy petition had been filed and the automatic stay was in effect, they did not have the intention to send the letter. This is corroborated by the fact that after the month of August, Citibank did not send statements to the Debtors requesting payment of their debt.

■ The Debtors argue, however, that the computer error excuse is not a valid defense against a Section 362(h) motion. They claim that this excuse has been rejected by the majority of courts, including the Bankruptcy Court for the District of New Hampshire in *McCormack v. Federal Home Loan Mortgage Corp. (In re McCormack)*, 203 B.R. 521 (Bankr.D.N.H.1996) (Yacos, J.) In that case, the court explained that the "computer did it" defense is "a nonstarter ... since intelligent beings still control the computer and could have altered the programming appropriately." *Id.*, at 524. In that case, the court concluded that said defense is not available to sophisticated business enterprises because they "have a clear obligation to adjust their programming and procedures and their instructions to employees to handle complex matters correctly." *Id.*, at 525.

In the case at bar, this Court finds that Citibank was in the process of converting

---

5. Since the automatic stay is operative upon the filing of the petition and does not require a formal service of process or notice to the creditors, a creditor may technically violate the stay by taking action against the debtor without knowledge of the stay.

6. Although Citibank did not submit an affidavit in support, this statement stands uncontested.

its computer programs when. it inadvertently issued the statement notifying the Debtors the balance of their account and requesting payment. This was a short time after Citibank received the notification from the Chapter 13. The record demonstrates that Citibank codified the bankruptcy status in their computer system and did not send Debtors any other notifications or conducted any other kind of collection efforts after that date. In view of this situation, the Court concludes that even though Citibank had knowledge of the bankruptcy petition, the August 9 letter was issued accidentally by the computer while a new software was being installed, and did not amount to a willful violation of the stay.

 In the case of BBV, the Court takes a different view because BBV sent six statements demanding payment after being notified of Debtors' bankruptcy. As of July 23, 1998, BBV was obligated to stop all collection efforts. However, it did not cease them until March 1999 when the Debtors filed the Section 362(h) motion. This Court holds that by failing to codify its computers after learning of the bankruptcy petition so that they stop generating collection letters, BBV willfully violated the stay. "Creditors who send computer-generated collection notices have a *responsibility and obligation* to ensure that such notices are not sent to bankruptcy debtors." *In re Brock Utili-*

*ties & Grading, Inc.,* 185 B.R. 719, 720 (Bankr.E.D.N.C.1995) (emphasis ours). *See* also, *Fleet Mortgage Group, Inc. v. Kaneb,* 196 F.3d 265 (1st Cir.1999) (holding that "[o]nce the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay.")

 Sixth, the Court finds that the Debtors failed to furnish any evidence of the actual damages to warrant recovery of the same. Even though the damage provisions of Section 362(h) of the United States Bankruptcy Code are mandatory,[7] debtors must establish that they suffered actual damages. *In re Flack, supra,* 239 B.R. at 163 (citation omitted). Bankruptcy courts in the First Circuit have reiterated that a debtor must sustain actual damages in order to be able to collect damages for violation of the automatic stay provision of the Bankruptcy Code. *Rivera Feliciano v. Sistema de Retiro del E.L.A., Assoc.,* 111 B.R. 380, 384 (Bankr.D.P.R.1990) (De Jesús, S.); *In re Adams,* 212 B.R. 703, 708, 711–12 (Bankr.D.Mass.1997) (Boroff, H.).[8] Actual damages must be proven with reasonable certainty and cannot be speculative or based on conjecture. *Archer v. Macomb County Bank,* 853 F.2d 497, 499–500 (6th Cir.1988) (quotation omitted). Thus, debtors have to base their claim for actual damages on specific evidence, thereby showing that the injury actually occurred.

---

**7.** Lundin points out that "[a]lthough it has been said that an award of damages is 'mandatory' once the bankruptcy court finds a 'willful' violation of the stay, there are reported decisions finding 'willful' violations of the stay in which damages were not awarded." Lundin, *supra,* § 3.106, at 147 (Cum.Supp. 1996).

**8.** Denying damages to the debtor, the court in *Adams, supra,* found that the debtor had suffered no actual injury. A creditor retained the debtor's rent payments in violation of the

automatic stay. Another creditor had a perfected security interest in the debtor's rent payments. The court found that the creditor's retention of the rent payments constituted only a technical violation of the stay, and that the debtor was not entitled to the rent payments in any event because of the valid security interest in those payments. Because the debtor had no rights in the payments, the debtor could not have been harmed by the creditor's retention of the payments, so no actual damages could be shown by the debtor.

■■■ In the case of Citibank, the Debtors seek to collect the amount of $1,000 in damages, excluding attorney's fees. Nonetheless, this Court finds that the Debtors are not entitled to receive compensation for damages. First, a technical violation does not warrant the imposition of sanctions except for the affirmative duty to restore the status quo after learning of the stay. Lundin explains that "[i]f the violation of the stay is without notice or knowledge of the filing, most bankruptcy courts are reluctant to impose sanctions other than to require the undoing of whatever occurred in violation of the stay." Lundin, *supra*, § 3.102, at 3–111 – 12. *See also, In re Clayton, supra*, 235 B.R. at 806; *In re Haan*, 93 B.R. 439, 440 (Bankr. W.D.N.C.1988); *Commercial Credit Corp. v. Reed*, 154 B.R. 471, 475 (E.D.Tex.1993). In the instant case, Citibank codified the bankruptcy status in its computer system and has not send Debtors any other statements or conducted any other kind of collection efforts. Thus, we hold that Citibank has already restored the status quo and no compensation for damages is warranted. With respect to the August 9 statement, the Court finds that the Debtors are not entitled to receive compensation because Citibank's action was inadvertent and not willful because the computer system automatically issued the letter while a new software was being installed and no other statements were sent after the month of August.

■■ In the case of BBV, the Debtors seek damages in the amount of $1,000, excluding attorney's fees, for the damages that they allegedly suffered as a result of BBV's postpetition collection efforts. The Debtors claim that they "believe that they have suffered damages in the amount of $1,000." Nonetheless, the Debtors failed to furnish any evidence of the actual damages suffered as a result of BBV's actions.

In fact, the Debtors failed to offer anything more than conclusory evidence of the damages. Nonetheless, a request for sanctions under Section 362(h) cannot be speculative. As in *Rivera Feliciano, supra*, Debtors' motion "offered no proof of the damage caused by [BBV's] violation and therefore, none are assessed." 111 B.R. at 384. This Court will not further burden its calendar by setting this matter over for a future evidentiary hearing to prove the requested damages when the Debtors have had ample opportunity to plea with specificity the basis for the damages requested and present evidence to this Court, and have failed to do so.

■■■ Seventh, the Court finds that the Debtors are not entitled to recover attorney's fees and costs from Citibank or BBV for prosecuting this stay violation litigation. In the case of Citibank, the Debtors request the amount of $1,500.00 in costs and attorney's fees. The Court holds, however, that such fees are not warranted. In *Liberty Mutual Insurance Co. v. Leroy Holding Co., Inc.*, 226 B.R. 746 (N.D.N.Y.1998), the court explained that "[w]here a violation of the automatic stay is technical or inadvertent, however, [an order requiring a party to pay the other the costs, disbursements and attorney's fees it incurred] is inappropriate." *Id.*, at 759 (citation omitted). In the instant case, Citibank committed a technical violation of the stay with respect to the July 8, 1998 statement because it was sent before the Clerk's notification. With respect to the August 9, 1998 statement, the Court holds that not damages are warranted because Citibank's action was inadvertent and not willful. In the case of BBV, the Debtors seek an order directing it to pay the amount of $1,500.00 in costs and attorney's fees they incurred in prosecuting this claim. "A court may award attorney's fees pursuant to section 362(h) even if the debt-

or has suffered no other compensable harm." *In re Robinson*, 228 B.R. 75, 85 (Bankr.E.D.N.Y.1998) (citation omitted). However, the fees must be actual, necessary and reasonable under the circumstances of the case. In awarding attorney's fees in stay violation litigation, we adopt the approach set forth in *Robinson, supra*:

> Attorney's fees awarded pursuant to section 362(h) must be reasonable and necessary. The policy of section 362(h), to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a "cottage industry" built around satellite fee litigation. *See Putnam v. Rymes Heating Oils, Inc. (In re Putnam)*, 167 B.R. 737, 741 (Bankr. D.N.H.1994). Attorneys are not at liberty to incur large legal fees simply because those fees will be shifted to their adversaries pursuant to section 362(h). *See Price v. Pediatric Academic Assoc., Inc.*, 175 B.R. 219, 221 (S.D.Ohio 1994), *on remand, In re Price*, 179 B.R. 70 (Bankr.S.D.Ohio 1995).

> Reasonable and necessary fees do not include unnecessary litigation costs. Several courts have greatly reduced awards of attorneys' fees in situations where unnecessary costs were incurred or under circumstances similar to the those presented in the instant motion. *See In re McCrosson*, 1997 WL 47625 (Bankr.E.D.Pa. Feb. 3, 1997) (awarding $500 in fees rather than the requested $1,000); *Price*, 179 B.R. at 73 (limiting fee award to $75 where legal fees and judicial time far exceeded the $13 in actual damages); *Putnam*, 167 B.R. at 741–42 (reducing attorneys' fees by over 50% where, *inter alia*, the fees bore no relation to the amount of actual damages suffered and where Debtor failed to attempt to settle the matter before filing the motion); *In re Newell*, 117 B.R. 323,

326 (Bankr.S.D.Ohio 1990) (awarding $150 and requiring notification of opposing counsel of the stay violation before permitting an award of attorneys' fees); *McLaughlin v. Fireman's Trust Mortgage Corp. (In re McLaughlin)*, 96 B.R. 554, 556 (Bankr.E.D.Pa.1989) (reducing fees by over 50%); *In re Houchens*, 85 B.R. 152, 155 (Bankr.N.D.Fla.1988) (awarding $50 but imposing Rule 9011 sanctions in the amount of $350 against the debtors and their attorney for bringing the contempt motion).

> In appropriate circumstances, a court may determine that a section 362(h) motion was wasteful and limit the attorney's compensation award to the amount that he would have earned had he handled the matter efficiently. Such circumstances are those where "the injury caused and damages incurred, other that attorney's fees, only amount to the cost of appearing in court to litigate the contempt motion; the burden of requiring the debtor's attorney to notify the creditor of the violations is insignificant; and no bad faith on the part of the defendant exists." *Price*, 175 B.R. at 222.

*Id.*, at 85–86. Hence, the Court will award those attorney's fees and costs necessary and reasonable incurred as a result of the violation of the stay.

 In the instant case, the Debtors assert that they incurred the amount of $1,500.00 in costs and attorney's fees in prosecuting this matter. After reviewing the two two-page motions filed by the Debtors, the Court finds that said amount is unreasonable. Moreover, it is unnecessary. Although the Bankruptcy Code does not require a debtor to warn his creditors of existing violations prior to moving for sanctions, the Debtors are under a duty to exercise due diligence in protecting and pursuing their rights and in mitigating their damages with regard to such viola-

tions. *In re Clayton, supra,* 235 B.R. at 812; *General Motors Acceptance Corp. v. Miller,* 10 B.R. 74, 76 (Bankr.S.D.Ohio 1981). This duty includes "such cooperation as might reasonably and promptly mitigate [the debtor's] damages." *In re Esposito,* 154 B.R. 1011, 1015 (Bankr. N.D.Ga.1993). For example, in *Shadduck v. Rodolakis,* 221 B.R. 573 (D.Mass.1998), the court held that "where the only damages to the debtor are the attorneys' fees related to bringing a contempt motion, courts have ruled that such damages are insufficient to satisfy the damages element of 11 U.S.C. § 362(h) unless the debtor attempts to resolve the dispute with the IRS prior to filing a motion for contempt and sanctions." *Id.,* at 585 (citation omitted). After considering the facts of this case, the Court holds that the Debtors are not entitled to recover attorney's fees and costs from BBV.

■ Eighth, the Court finds no basis for punitive damages against the Creditors. Neither Citibank nor BBV engaged in an egregious, vindictive or intentional misconduct to warrant an award of punitive damages. *In re Clayton, supra,* 235 B.R. at 811. *See* also, *In re Barboza,* 211 B.R. 450 (Bankr.D.R.I.1997) (holding that punitive awards for automatic stay violations are reserved for cases in which violator's conduct amounts to something more that bare violation justifying compensatory damages or injunctive relief).

■ We must note and caution Debtors' counsel on the provisions of Rule 9011(b) of the Federal Rules of Bankruptcy Procedure. Rule 9011(b) imposes an affirmative duty on the signer of a pleading to make a reasonable inquiry on the viability, both legally and factually, of the claims made in the pleading. The Rule requires attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with court are well grounded in fact, legally tenable, and not interposed for any improper purpose.[9] "Attorneys and parties are required to 'think first and file later'; to 'look before leaping. . . .' They may not . . . 'drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation.'" 10 Lawrence P. King, *Collier on Bankruptcy* ¶ 9011.04[2][a] (15th ed. rev'd. 1999).

In the case at bar, Debtors' counsel did not comply with the affirmative duty imposed by Rule 9011(b). In the Motion for partial summary judgement filed with this Court, Debtors' counsel simply copied a motion he had already filed against the Treasury Department, and did not replace the name of that creditor for Citibank or applied the case law to the particular facts of the instant case. For example, in page 7, Debtors' counsel concluded that "[i]n the case at bar the creditor knew of the automatic stay and the creditor filed the tax liens with the intent to levy debtor's property. Thus, the creditor, the Department of the Commonwealth of Puerto Rico, willfully violated the automatic stay." Similarly, in page 8, Debtors' counsel states that "the *Department of the Treasury* had actual notice of the bankruptcy petition, filed a proof of claim and notwithstanding served five notices of liens. . . . It has been consistently held by the Bankruptcy courts that the computer did it defense does not excuse the willfulness of an action to collect from the debtor thus the actions by the Department of Treasury are in fact

---

9. *See,* for example, *Monument Builders of Greater Kansas City, Inc. v. American Cemetery Assn. of Kansas,* 891 F.2d 1473, 1484–85 (10th Cir.1989), *cert. denied,* 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 498 (1990), interpreting Rule 11 of the Federal Rules of Civil Procedure, which is the counterpart of Bankruptcy Rule 9011.

willful violations of the automatic stay." Nevertheless, this case does not involve the Treasury Department or any tax liens. Thus, Debtors' counsel failed to conduct a reasonable inquiry to assure that the motion for summary judgment was well-grounded in fact in accordance with Rule 11. The Court hereby admonishes Debtors' counsel, directing him to Rule 9011(b) of the Federal Rules of Bankruptcy Procedure, which prescribes an advocate's duty to conduct a reasonable inquiry into the facts and the applicable law before signing a pleading, motion, or any other document.

## VII. Conclusion

Based upon the foregoing findings of fact and conclusions of law, the Debtors' Motion for partial summary judgment against Citibank is hereby denied. Moreover, this Court finds that Citibank did not violate the automatic stay provisions of the Bankruptcy Code by sending the Debtors two letters requesting the payment of a prepetition debt. We find that Citibank sent the first letter before being notified of the bankruptcy petition, thus incurring in a technical violation of the stay, which does not warrant the imposition of sanctions. We also find that the second letter was issued accidentally by the computer while a new software was being installed, and does not amount to a willful violation of the stay which warrants sanctions. Thus, the Debtors are not entitled to recover any damages, actual or punitive, costs or attorneys' fees from Citibank under Section 362(h) of the Bankruptcy Code.

With regards to BBV, this Court holds that said bank willfully violated the stay by sending six letters demanding payment to the Debtors after being notified by the Trustee of the bankruptcy proceedings. Nonetheless, the Court will not award

damages to the Debtors because the Debtors failed to furnish any evidence of the actual damages suffered as a result of BBV's actions. Finally, the Court holds that the Debtors are not entitled to recover attorney's fees and costs from BBV.

WHEREFORE IT IS ORDERED that both the Debtors' motions requesting sanctions for willful violation of the automatic stay against Citibank [10] and against BBV [11] are hereby DENIED. The Clerk shall provide notice of this order to all parties in interest.

SO ORDERED.

---

**10.** Docket no. 17.

**11.** Docket no. 16.