In re Edgardo Ryan RIJOS & Julia E. Cruz Nieves, Debtors.

Edgardo Ryan Rijos & Julia E. Cruz Nieves, Appellants,

v.

Banco Bilbao Vizcaya & Citibank, Appellees.

No. PR 00–080.

United States Bankruptcy Appellate Panel of the First Circuit.

June 19, 2001.

Irving K. Hernandez Valls, Rio Piedras, PR, on brief for the Appellants.

Wanda I. Luna Martinez and Montanez & Alicea Law Offices on brief, Hato Rey, PR, for Appellee Banco Bilbao Vizcaya.

Before HAINES, HILLMAN, FEENEY, U.S. Bankruptcy Appellate Panel Judges.

FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The Debtors appeal the bankruptcy court's order denying their requests for sanctions against Citibank and Banco Bilbao Vizcaya–Puerto Rico ("BBV"), formerly Ponce Bank, for willful violations of the automatic stay. Treating the Debtors' Motions Requesting Sanctions for Willful Violation of the Automatic Stay against Citibank and BBV (the "Motions") as motions for summary judgment and utilizing the standard for entry of summary judgment, the bankruptcy court made findings of fact and rulings of law without holding a hearing on the Debtors' Motions. Specifically, the bankruptcy court denied the Debtors' requests for actual damages, attorney's fees and punitive damages, although it found that both Citibank and BBV violated the automatic stay and that BBV's violation was willful.

The principal issue presented by this appeal is whether the bankruptcy court deprived the Debtors of procedural due process in denying the Motions without affording them an opportunity to present evidence as to the amount of their actual damages, including attorney's fees, and punitive damages. A subsidiary issue is whether the bankruptcy court erred in ruling, in the absence of an affidavit or other evidence, that Citibank did not willfully violate the automatic stay when its computer system automatically sent the Debtors a collection letter.

## II. BACKGROUND

### A. Bankruptcy Court Proceedings

The bankruptcy court in its published decision, see In re Rijos, 260 B.R. 330

(Bankr.D.P.R.2001),[1] set forth the following chronology of events leading to the present appeal:

1. On June 30, 1998, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code. The Debtors included the names of the Creditors and their respective addresses in the master list attached to the bankruptcy petition. The Debtors listed Citibank and BBV in the schedules filed on July 13, 1998 as having claims in the amounts of $3,744.24 and $6,299.54, respectively.

2. On July 23, 1998, the Chapter 13 Trustee sent a notification to the Creditors indicating that a meeting of creditors under 11 U.S.C. § 341 would be held on August 14, 1998.

3. On November 5, 1998, the Court confirmed Debtors' Chapter 13 plan.

4. On March 9, 1999, Debtors filed two motions requesting this Court to impose sanctions against BBV and Citibank for willful violation of the automatic stay.

5. On March 15, 1999, this Court ordered the Creditors to show cause within twenty days from notice of the order why sanctions should not be imposed. Said period ended on Monday April 5, 1999 because the expiration date, April 4, fell on a Sunday.

6. On March 30, 1999, Citibank filed a reply to Debtors' motion in accordance with the Court's order.

7. On April 12, 1999, the Debtors filed a motion for partial summary judgment against Citibank alleging that Citibank's actions constituted a willful violation of the stay and that this determination did not require a finding of specific intention but rather a finding of knowledge of the bankruptcy filing. Debtors argued that Citibank's actions constituted a willful violation of the stay and that partial summary judgment should be entered in their favor because Citibank had been notified of the Debtors' petition for bankruptcy before sending the statements requesting payment. The Debtors also requested that actual damages for attorney's fees and cost liability be awarded in their favor and that an evidentiary hearing be held in order to determine other damages.

8. On April 16, 1999, BBV filed its answer to Debtor's motion requesting sanctions. BBV argues that the alleged collection letter was merely a statement of account, which did not demand payment of the debt or threaten the Debtors with legal collection proceedings. Moreover, BBV argues that Debtors failed to show that BBV sent statements after October 1998 or that it attempted to collect the debt after Debtors filed for bankruptcy. Finally, BBV argues that Debtors did not act in good faith because the alleged situation could have been solved by calling or sending them a letter rather than by filing a motion requesting sanctions.

9. On April 28, 1999, Citibank filed its reply to Debtors' motion for summary judgment. Citibank argues that a genuine issue of fact exists regarding the deliberateness of its actions. According to Citibank, Debtors must prove that its action was willful, deliberate and with the general intention to collect the debt. Citibank further argues that Debtors have not proven that it had the intention to collect the debt or to violate the stay. Moreover, Citibank alleges that Debtors did not establish damages with the particularity required. Hence, Citibank

---

1. The Bankruptcy Court sought and obtained permission from the Bankruptcy Appellate Panel to amend its decision and order dated April 26, 2000 to include a citation to *Fleet Mortgage Group, Inc. v. Kaneb,* 196 F.3d 265 (1st Cir.1999).

contends that Debtors' motion for summary judgment should be denied.

10. On May 11, 1999, the Debtors filed a reply to BBV's answers to their motion requesting sanctions. The Debtors argues [sic] that the statements sent were in fact collection letters, which demanded payment. Moreover, Debtors submitted evidence to demonstrate that BBV continued to send collection letters.

*Rijos,* 260 B.R. at 333–34.

With respect to the factual background, the bankruptcy court found certain facts to be uncontested. As to Citibank, the bankruptcy court found the following:

1. On July 8, 1998, Citibank sent a credit card statement to the Debtors indicating that the balance was $3,711.46 and requesting a minimum payment of $211.00.

2. On August 9, 1998, Citibank sent another statement indicating that the balance was $3,771.72 and requesting a minimum payment of $301.00. . . .

As to BBV, the bankruptcy court found the following:

3. On August 9, 1998, BBV sent Debtors a credit card statement indicating that the balance on their account was $6,516.91 and requesting a minimum payment of $689.91.

4. On September 9, 1998, BBV sent another statement indicating that their balance was $6,516.91 and requesting a minimum payment of $825.91.

5. On November 9, 1998, BBV sent a similar statement to the Debtors indicating that the balance was $6,516.91 and requesting a minimum payment of $798.91.

6. On December 9, 1998, BBV sent another statement to the Debtors indicating that the balance was $6,516.91 and requesting payment of $907.91.

7. On January 11, 1999, BBV sent a statement to the Debtors requesting the payment of $1016.91.

8. On February 9, 1999, BBV again sent another statement to the Debtors requesting payment of $1,125.91.

*Id.* at 335.

The record on appeal reflects additional pertinent information. Specifically, the Debtors previously had filed, on September 9, 1998, Motions Requesting Sanctions for Willful Violation of Automatic Stay against Citibank and BBV which the bankruptcy court denied without prejudice on October 28, 2001 due to defective service, namely failure to serve Citibank and BBV in accordance with Fed. R. Bankr.P. 7004(b)(3). Despite the defective service, BBV received a copy of the Debtors' request for sanctions because it filed, on October 18, 1998, a motion for an extension of time within which to respond to the Debtors' request for sanctions, thereby waiving any defect in service. *See* Fed. R.Civ.P. 12(h) made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7012. The bankruptcy court did not act on BBV's motion. Also, despite receipt of the Debtors' sanction request, BBV continued to send statements to the Debtors for four more months.

The Debtors refiled their Motions for sanctions on March 9, 1999. In response, the bankruptcy court issued orders to Citibank and BBV to show cause, within 20 days, why the sanctions requested by the Debtors should not be imposed. The Debtors' requests for sanctions were set forth in ¶ 9 of the Motions as follows: *"Debtors believe they have suffered damages in the amount of $1,000 and should recover damages as well as an estimated $1,500 for costs and attorney [sic] fees plus compensatory and/or punitive damages in an amount not less than $3,000.00."* (Emphasis supplied). Citi-

bank filed a timely response to the bankruptcy court's order to show cause; BBV did not.

### B. The Debtors' Allegations against Citibank

In their Motion for Partial Summary Judgment filed on April 12, 1999, the Debtors stated the following with respect to Citibank's conduct:

> In the case at bar the damages to the debtor are mandatory and the debtor for the creditor's "willful violation" of the stay shall recover damages, including costs and attorney's fees [sic]. Thus on the question of actual damages in the form of attorney's fees the debtor is entitled to judgment on the pleadings. However, Attorney's Fees and costs shall be awarded after the undersigned is provided with the opportunity to provide the Court a billing statement indicating fees and expenses incurred regarding the pleadings and motions filed in the present contested matter.
>
> \*    \*    \*    \*    \*    \*
>
> Applying the standard for determination of willful violation of the automatic stay which do [sic] not require a finding of specific intention but rather a finding of knowledge of the bankruptcy filing and the intention of the creditor actions that violated the automatic stay, partial summary judgment on the question of willful violation of the automatic stay should be awarded in favor of the movant. On the question of actual damages in the form of attorney's fees and cost liability should be awarded in favor of the movant [sic]. Movant's [sic] requests [sic] that actual damages other than attorney's fees and costs and punitive damages shall be determined at an evidentiary before this Honorable Court.

Although the Debtors' attorney obviously garbled the Debtors' request for an evidentiary hearing, he clearly intended to request one in the Motion for Partial Summary Judgment.[2] Moreover, the Debtors did not seek a determination of the amount of damages in the Motion for Partial Summary Judgment, implicitly recognizing that a determination of the amount of attorney's fees would require a fee application and that a determination of emotional distress or other damages likely would require the Debtors' testimony and medical records or other corroborating evidence.

In its Reply to the Motion for Partial Summary Judgment, Citibank asserted that "a genuine issue regarding the intention of the computer-generated statements of account" existed precluding summary judgment. Additionally, it maintained that the Debtors failed to support their motion with documents and affidavits, particularly with respect to damages. It stated the following:

> The Debtor [sic] must allege with particularity and prove the damages or injury suffered as a result of receiving a statement of account, especially when bankruptcy attorneys usually advise their clients of the relief obtained upon the filing of the petition. Debtors should have known that even though [sic] they receive a general statement of account, notice or requests for payment, they should not fear or worry, because they are protected by the Bankruptcy Code. The duty of advising a Debtor relies [sic] on his attorney, and if an attorney failed [sic] to advise a Debtor of the protection granted upon filing under section 362, he or she must be precluded from requesting attorney's fees when any kind of violation of the stay occurs.

---

**2.** Additionally, as the bankruptcy court observed, Debtors' counsel failed to proofread his Motion for Partial Summary Judgment in other respects as he referred to the Department of the Treasury instead of Citibank in several parts of the Debtors' motion.

Although Citibank criticized the Debtors for failing to prove their damages, significantly it provided no evidentiary support in the form of affidavits or other evidence for its assertion that "[o]nce Citibank had knowledge of the bankruptcy, Debtors' accounts were recodified under the new computer system and no further statements sent nor collection efforts were commenced...." As discussed below, the bankruptcy court accepted this argument as fact.

Approximately a year after Citibank filed its Reply to the Motion for Partial Summary Judgment, the bankruptcy court entered its decision and order, denying the Debtors' Motion Requesting Sanctions against Citibank and their Motion for Partial Summary Judgment. The bankruptcy court did not schedule or hold a hearing on either motion, advise the Debtors that their requests for an opportunity to submit a billing statement with respect to attorney's fees and for an evidentiary hearing were denied, or give the Debtors an opportunity to submit evidence as to actual damages. Instead, the bankruptcy court denied the Debtors' requests for sanctions, determining that the Debtors failed to contest Citibank's statement that its conduct "does not amount to a willful violation of the stay because the computer system automatically issued the letter while a new software was being installed." *Rijos*, 260 B.R. at 338.

### C. The Debtors' Allegations against BBV

As stated above, BBV failed to timely respond to the bankruptcy court's order to show cause.[3] When it did reply, it averred that the Debtors had not acted in good faith because "the alleged situation could have been solved by a[sic] sending a letter or a telephone call from debtors [sic] attorney to the herein creditor prior to filing the motion requesting sanctions. If a letter from debtors' attorney or a telephone called [sic] had been made, the situation could have been solved prior to filing the motion."[4] The Debtors' responded to BBV's Answer on May 1, 1999.

As in the case of Citibank, the bankruptcy court's order was entered approximately one year after the filing of the Debtors' Reply. The Motion Requesting Sanctions against BBV was never set for a hearing, and the Debtors were given no opportunity to be heard on damages, despite their request for an evidentiary hearing.

## III. DISCUSSION

### A. *Standard of Review*

The first task faced by the panel is to determine the appropriate standard for review of the bankruptcy court's order. In *Kaneb*, the case most directly on point, the First Circuit stated "[w]e review directly the bankruptcy court's findings of fact and rulings of law." 196 F.3d at 266. Generally, an appellate court "independently reviews the bankruptcy court's decision, ordinarily applying the 'clearly erroneous' standard to findings of fact and de novo review to conclusions of law." *Stoehr v. Mohamed*, 244 F.3d 206, 208 (1st Cir. 2001) (citing *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994),

---

3. Accordingly, it would not have been an abuse of discretion to grant the Debtors' Motion Requesting Sanctions on April 5, 1999 as to BBV.

4. Receipt of the first request for sanctions did not deter BBV's conduct in continuing to send statements. Accordingly, as the Debtors noted in their appellate brief, it is hard to fathom how a letter or a telephone call would have elicited a different response from BBV.

**388**

and *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1310–11 (1st Cir.1993)). If the bankruptcy court had granted summary judgment, *de novo* review would be warranted. *Stoehr*, 244 F.3d at 208.[5]

■ The bankruptcy court in its decision utilized the standard applicable to summary judgment in denying the Debtors' Motions Requesting Sanctions. The court made findings of fact and conclusions of law based upon its view that the parties had not raised any genuine issues of material facts that needed to be tried, although Citibank conceded the existence of such facts in its Reply, and that only questions

of law remained. *Rijos*, 260 B.R. at 334. Although the bankruptcy court denied the Debtors' Motion for Partial Summary Judgment, it apparently treated the responses to the Motions Requesting Sanctions as the creditors' cross motions for summary judgment. Thus, we review the bankruptcy court's decision under the *de novo* standard.

Nevertheless, we recognize that the bankruptcy court's decision does not fit within the usual paradigm for appellate review. The bankruptcy court presumably exercised its discretion in refusing the Debtors' request for an evidentiary hear-

---

5. In *In re Varrasso*, 37 F.3d 760 (1st Cir. 1994),the United States Court of Appeals elaborated:

> In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056. By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure. See Bankr.R. 7056; *see also In re Colonial Discount Corp.*, 807 F.2d 594, 597 (7th Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 526 (1987). The jurisprudence of Rule 56 teaches that we must review orders granting summary judgment *de novo*. *See Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). This standard of review is not diluted when, as now, the underlying proceeding originates in the bankruptcy court. *See In re Fussell*, 928 F.2d 712, 715 (5th Cir.1991), *cert. denied*, 502 U.S. 1107, 112 S.Ct. 1203, 117 L.Ed.2d 443(1992); *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 243 (9th Cir.1988); *In re Mullet*, 817 F.2d 677, 678–79 (10th Cir.1987); *In re Martin*, 761 F.2d 1163, 1166 (6th Cir.1985); *see also In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991) (explaining that in connection with "appeals from the decision of a district court on appeal from the bankruptcy court, the court of appeals independently reviews the bankruptcy court's decision, applying ... *de novo* review to conclusions of law").
>
> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant

> has successfully demonstrated an entitlement to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality—say, affidavits or depositions—that support his position. *See Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir.1991); *Bias v. Advantage Int'l, Inc.*, 905 F.2d 1558, 1560–61 (D.C.Cir.1990), *cert. denied*, 498 U.S. 958, 111 S.Ct. 387, 112 L.Ed.2d 397(1990); *cf. Mendez v. Banco Popular de Puerto Rico*, 900 F.2d 4, 7 (1st Cir.1990) ("The mere fact that plaintiff failed to file a timely opposition does not mean that defendant's Rule 56 motion should be granted"). When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. *See, e.g., Morris v. Government Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994); *Garside*, 895 F.2d at 48; *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 934 (1st Cir.1987). This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. *See Blanchard v. Peerless Ins. Co.*, 958 F.2d 483, 488 (1st Cir.1992) (warning that summary judgment is precluded "unless no reasonable trier of fact could draw any other inference from the 'totality of the circumstances' revealed by the undisputed evidence").

37 F.3d 760, 762–63 (footnote omitted).

ing and in making its findings of fact without the benefit of live testimony, affidavits and the opportunity for cross examination. Accordingly, we could utilize a *de novo* standard of review with respect to the denial of the Motions Requesting Sanctions and a clearly erroneous standard of review with respect to the factual underpinnings of the court's rulings. Alternatively, we could apply an abuse of discretion standard to the court's decision not to schedule a hearing, as well as to its decision to deny attorney's fees as the determination of whether to award fees and in what amount generally are reviewed under the abuse of discretion standard.[6] We conclude that it is immaterial which standard is applied because due process implicates all standards and under either a *de novo* review or an abuse of discretion standard the order of the bankruptcy court denying the Debtors' Motions Requesting Sanctions must be reversed. *See Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 109 (1st Cir.1997) ("all roads lead to Rome because our choice between the two standards of review will not affect the outcome on appeal").

## B. *Applicable Law*

### 1. The Automatic Stay

The United States Court of Appeals for the First Circuit emphasized the fundamental significance of the automatic stay to debtors in *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir.1997): "The automatic stay is among the most basic of debtor protections under bankruptcy law. It is intended to give the debtor breathing room by 'stop[ping] all collection efforts, all harassment and all foreclosure actions.'" *Id.* at 975 (citations omitted). The respite offered by the automatic stay "enables debtors to resolve their debts in a more orderly fashion, and at the same time safeguards their creditors by preventing 'different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets.'" *Id.* (citations omitted).

Section 362(h) of the Bankruptcy Code provides individual debtors with a powerful tool to safeguard the benefits of the automatic stay and to discourage violations of it. *Putnam v. Rymes Heating Oils, Inc. (In re Putnam)*, 167 B.R. 737, 741 (Bankr.D.N.H.1994). It provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Though the language of § 362(h) appears to be unambiguous and mandates the award of damages for willful violations, decisions interpreting it are legion. *See generally* Eric C. Surette, *Remedies and Damages*

---

**6.** The abuse of discretion standard has been articulated by the panel on numerous occasions. For example, in *In re Warner*, 247 B.R. 24 (1st Cir. BAP 2000), the panel stated the following:

> Judicial discretion is necessarily broad-but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

247 B.R. at 25 (quoting *Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg., Co.*, 864 F.2d 927, 929 (1st Cir.1988)). "The cask which encases a judge's discretion, though commodious, can be shattered when a reviewing tribunal is persuaded that the trial court misconceived or misapplied the law, or misconstrued its own rules." *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir.1995) (citing *Aggarwal v. Ponce Sch. of Medicine*, 745 F.2d 723, 727 (1st Cir.1984)).

*for Violations of the Automatic Stay Provisions of the Bankruptcy Code (11 U.S.C.A. § 362(h)), by Parties Other Than the Federal Government,* 153 A.L.R. Fed. 463, 1999 WL 181399 (1999). Indeed, there are splits of authority as to 1) whether the term "actual damages" is intended to include damages for purely emotional injury, *compare Aiello v. Providian Fin. Corp.,* 239 F.3d 876 (7th Cir.2001) (debtors can only "piggyback" claims for emotional distress if they have suffered financial injuries) [7] *with Fleet Mortgage Group v. Kaneb,* 196 F.3d 265 (1st Cir.1999) (emotional damages qualify as "actual damages" under § 362(h)); 2) whether the award of attorney's fees under § 362(h) is an independent matter from the issue of actual damages or if the award of attorney's fees is conditional upon a showing of actual injury, *compare In re Peterkin,* 102 B.R. 50, 54 (Bankr.E.D.N.C.1989) *with Lovett v. Honeywell, Inc.,* 930 F.2d 625, 629 (8th Cir.1991); *Loethen Oil Co. v. Hen House Interstate, Inc. (In re Hen House Interstate, Inc.),* 136 B.R. 220, 223 (Bankr. E.D.Mo.1992); *In re Haan,* 93 B.R. 439, 441 (Bankr.W.D.N.C.1988); and 3) whether there is a duty to attempt to mitigate damages before filing the contempt motion under § 362(h), *compare Shadduck v. Rodolakis,* 221 B.R. 573, 585 (D.Mass.1998) (courts have ruled that attorney's fees are insufficient to satisfy the damages element of 11 U.S.C. § 362(h) unless the debtor attempts to resolve the dispute prior to filing a motion for contempt and sanctions); *In re Craine,* 206 B.R. 594 (Bankr. M.D.Fla.1997); *In re Brock Utils. & Grading, Inc.,* 185 B.R. 719 (Bankr.E.D.N.C. 1995); *In re Clayton,* 235 B.R. 801, 811–12 (Bankr.M.D.N.C.1998); *In re Esposito,* 154 B.R. 1011, 1015 (Bankr.N.D.Ga.1993) *with Price v. Pediatric Academic Assoc., Inc.,* 175 B.R. 219 (S.D.Ohio 1994) ("it is improper to impose a blanket rule on all debtors requiring them to notify creditors to try to resolve the violations prior to filing a contempt motion"). We need not reach any of these issues, which implicate several competing policies, because this appeal involves the fundamental right to due process.

### 2. Procedural Due Process

■ Due process contains both substantive and procedural components.[8] In this case, the bankruptcy court neglected the latter component. The bankruptcy court's failure to enforce the procedural safe-

---

**7.** The court in *Aiello* opined that the protection afforded by the automatic stay is "financial in character: it is not protection of peace of mind." 239 F.3d at 879. The court indicated that a creditor who harasses a debtor could be sued under state tort law. *Id.* at 880. *But see E. Equip. and Serv. Corp. v. Factory Point Nat'l Bank, Bennington,* 236 F.3d 117 (2d Cir.2001).

**8.** In *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951), Justice Frankfurter in a seminal description of due process stated:

[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo–American constitutional history and civilization, 'due process' cannot be imprisoned within the treacherous limits of any formula. Representing a profound attitude of fairness between man and man, and more particularly between the individual and government, 'due process' is compounded of history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess. Due process is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process.

*Id.* at 162, 71 S.Ct. 624.

guards embodied in the Federal Rules of Bankruptcy Procedure by holding a hearing on the Debtors' Motions resulted in misapplication of the burden of proof applicable to stay violation motions under 11 U.S.C. § 362(h), a decision containing findings unsupported by evidence and the entry of summary judgment in favor of creditors who never filed such motions.

Fed. R. Bankr.P. 9013 provides that "[a] request for an order ... shall be by written motion.... The motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Fed. R. Bankr.P. 9014 pertaining to contested matters provides that

> [i]n a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion.... [U]nless, the court otherwise directs, the following rules shall apply: 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7064, 7069, and 7071.

Moreover, neither Rule 9013 nor Fed. R. Bankr.P. 7008, which makes Fed.R.Civ.P. 8 applicable to adversary proceedings, requires more than "a short and plain statement of the claim" and "a demand for judgment for the relief the pleader seeks." The Motions satisfied the requirements of these rules.

The Debtors' Motions complied with Fed. R. Bankr.P. 9013 and 7008. In their Motions, the Debtors described with particularity the conduct of Citibank and BBV. Additionally, they set forth the relief that they sought, namely damages in the amount of $1,000, costs and attorney's fees in the amount of $1,500 and punitive damages in an amount not less than $3,000. The Motions satisfied the requirements of the applicable rules.

### 3. Summary Judgment

The bankruptcy court employed the standard for summary judgment in its review of the Debtors' Motions, although the Debtors only moved for summary judgment against Citibank. Moreover, Citibank conceded in its Reply to the Debtors' Motion for Partial Summary Judgment that genuine issues of fact existed precluding summary judgment.

■ Although there may be instances when it is permissible for a court to grant summary judgment on its own initiative coincident with a decision to deny a motion for summary judgment, such instances should be rare. *Jardines Bacata, Ltd. v. Diaz–Marquez*, 878 F.2d 1555, 1560 (1st Cir.1989).[9] The court in *Jardines* explained:

> For sua sponte summary judgment to be a viable option, discovery in the case must be sufficiently advanced and the

---

**9.** In *Jardines*, the court stated:

A district court has power to order summary judgment sua sponte, *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *National Expositions, Inc. v. Crowley Maritime Corp.*, 824 F.2d 131, 133–34 (1st Cir.1987), but that power should be exercised sparingly. Courts that yearn for the blossom when only the bud is ready act at their peril; proceeding with unnecessary haste frequently results in more leisurely repen-

tance. Consequently, we have too often in the recent past been forced to vacate sua sponte summary judgments. *See, e.g., Donate–Romero v. Colorado*, 856 F.2d 384, 386–87 (1st Cir.1988); *Bonilla v. Nazario*, 843 F.2d 34, 37 (1st Cir.1988); *Morales Morales v. Arias*, 834 F.2d 255, 257 (1st Cir.1987); *see also PNH Corp. v. Hullquist Corp.*, 843 F.2d 586 (1st Cir.1988) (reversing sua sponte dismissal of cross-claims). 878 F.2d at 1560–61.

party against whom judgment was ordered must have been on notice to bring forth all of its evidence on the essential elements of the critical claim or defense. *See Celotex,* 477 U.S. at 326 [106 S.Ct. 2548]; *National Expositions,* 824 F.2d at 133–34. "Notice" in this context means that the losing party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward. Doubts on this score should be resolved in the loser's favor; "great care must be exercised to assure that the [unsuccessful party] has had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure,* § 2720 at 34 (1983). It is only after these preconditions have been met that the court can proceed to ascertain fairly whether a genuine issue of material fact does or does not exist.

878 F.2d at 1561.

C. *The Bankruptcy Court Erred in Denying the Debtors' Motion for Partial Summary Judgment*

■ With respect to the applicable standard for determining stay violation motions, the United States Court of Appeals for the First Circuit in *Kaneb* declared that

> a willful violation does not require a specific intent to violate the stay.... [i]n cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate. The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actu-

al notice, the burden shifts to the creditor to prevent violations of the automatic stay.

196 F.3d at 269 (citations omitted). It is undisputed that Citibank had actual notice of the filing of the Debtors' bankruptcy petition when it sent them a second bill.[10] Citibank had the burden of proving that it took steps to either prevent or reverse violations of the stay. This required the introduction of admissible evidence. Citibank failed to submit admissible evidence to rebut the only inference that can be derived from the undisputed facts, namely that the stay violation was willful.

We find that under the standard articulated by the court in *Kaneb,* the "computer did it" defense is not viable and that the bankruptcy court erred in absolving Citibank from liability under § 362(h) on the grounds that the computer automatically issued a bill while a new software system was being installed. Accordingly, the bankruptcy court erred in denying the Debtors' Motion for Partial Summary Judgment.

D. *The Bankruptcy Court Erred in Denying the Debtors' Motions and in Granting Summary Judgment to Citibank and BBV*

The bankruptcy court determined that "the Debtors failed to furnish any evidence of the actual damages to warrant recovery of the same." 260 B.R. at 339. This determination, to paraphrase the court in *Jardines,* was not "a viable option" as discovery had not be initiated, let alone "sufficiently advanced," and the Debtors were not "on notice to bring forth all of ... [their] ... evidence on the essential elements" of their claims against Citibank and BBV. To the extent the bankruptcy

---

**10.** It also is undisputed that Citibank did not have actual notice of the filing of the petition at the time it sent the Debtors the first bill.

court expected the Debtors to refute the allegations made by Citibank and BBV that they suffered no actual injuries, the bankruptcy court was obligated to apprize the Debtors that a response was necessary pursuant to Fed. R. Bankr.P. 9013. To the extent that the bankruptcy court treated the creditors' replies as cross motions for summary judgment, it was incumbent upon the bankruptcy court to order the Debtors to file responses to the creditors' "answers" to their Motions before concluding that they failed to *prove* actual damages.

Although the bankruptcy court properly stated the law under § 362(h), it failed to note that in *every* case it cited the bankruptcy court either held a hearing or conducted an evidentiary hearing before ruling on the § 362(h) motion before it. Thus, the correctness of the bankruptcy court's views as to whether damages are recoverable in a case such as this one, where actual damages other than attorney's fees may be difficult to establish, is not germane to the real issue as to who had the burden of going forward with evidence and whether that party met its burden.[11]

The bankruptcy court did not afford the Debtors an opportunity to address the issue of damages at the evidentiary hearing they affirmatively requested. The bankruptcy court never scheduled the Debtors'

Motions Requesting Sanctions and Motion for Partial Summary Judgment for hearing prior to determining that the Debtors were not entitled to damages and attorney's fees. The record on appeal does not reflect that the Debtors had *any notice*, let alone "notice reasonably calculated under all the circumstances" to apprize them that the court intended to rule on the issue of damages and attorney's fees without a hearing. *See Mullane v. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The failure to afford the Debtors an opportunity to prove damages thus violated fundamental principles of due process.[12]

The bankruptcy court's decision to deny attorney's fees is defective factually and legally. With respect to attorney's fees, the bankruptcy court expressly found that the Debtors' request for attorney's fees in the amount of $1,500 was unreasonable and unnecessary. Although the bankruptcy court indicated that the Debtors were not obligated to warn creditors of an existing violation of the stay, it determined, as a matter of law, that they had a duty to mitigate their damages, apparently adopting BBV's argument that a telephone call or letter would have resolved the problem. Nothing in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure suggests that such a duty exists.

---

11. It was clear error for the bankruptcy court to state that the Debtors' motion " 'offered no proof of the damage caused by [BBV's] violation and therefore none are assessed,' " while quoting a case in which a trial on the merits was held. *Rijos*, 260 B.R. at 340 (quoting *Rivera Feliciano v. Sistema de Retiro del E.L.A. Assoc.*, 111 B.R. 380 (Bankr.D.P.R. 1990)).

12. The bankruptcy court was particularly unjustified in stating that "[t]his Court will not further burden its calendar by setting this matter over for a future evidentiary hearing to

prove the requested damages when the Debtors have had ample opportunity to plea with specificity the basis for the damages requested and present evidence to this Court...." *Rijos*, 260 B.R. at 340. Due process would have been satisfied by the issuance of an order or response deadline to the Debtors requiring them to submit evidence of their actual damages and attorney's fees, failing which their claim for damages would be disallowed. This small step would have avoided the perception that the Debtors were denied their "day in court."

In determining that the Debtors were not entitled to attorney's fees, the bankruptcy court only mentioned the time associated with filing the Motions. It failed to mention the attorney's fees associated with the preparation and filing of the Motion for Partial Summary Judgment and the various responses filed by the Debtors to the pleadings filed by Citibank and BBV in determining that the Debtor's legal fees were unwarranted.

## IV. CONCLUSION

The orders of the bankruptcy court denying the Debtors' Motions and their Motion for Partial Summary Judgment are **REVERSED,** and the matter is **REMANDED** to the bankruptcy court for an evidentiary hearing on damages.