**In re PMC MARKETING CORP., Debtor(s).**

**Noreen Wiscovitch Rentas, Plaintiff**

**v.**

**Triple–S Salud Inc, Defendants.**

**Bankruptcy No. 09–02048.**
**Adversary No. 12–00121.**

United States Bankruptcy Court,
D. Puerto Rico.

Sept. 24, 2013.

Rafael A Gonzalez Valiente, Latimer Biaggi Rachid & Godreau, San Juan, PR, for Plaintiff.

Jorge I. Peirats, Pietrantoni, Mendez & Alvarez, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

BRIAN K. TESTER, Bankruptcy Judge.

Before this Court is Defendant's Motion for Summary Judgment and its accompanying Statement of Uncontested Material Facts [Dkt. No. 15, 16], Trustee/Plaintiff's Opposition to Defendant's Motion for Summary Judgment and its accompanying Statement of Uncontested Material Facts [Dkt. No. 20, 21], and Defendant's Reply to

Trustee/Plaintiff Opposition to Defendant's Motion for Summary Judgment and its accompanying Statement of Uncontested Material Facts [Dkt. No. 22]. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

## I. Background

Debtor, PMC Marketing Corporation filed for Chapter 11 bankruptcy protection on March 18, 2009. Debtor's bankruptcy case was converted to chapter 7 on May 21, 2010. On March 2, 2012, Debtor's Chapter 7 trustee, Noreen Wiscovitch Rentas brought this adversary proceeding to avoid, as a preferential transfer, a payment for $77,088.00 which Debtor made to Defendant Triple–S on February 27, 2009. Defendant's Motion for Summary Judgment, Plaintiff's Opposition and Defendant's Reply followed.

## II. Summary Judgment Motion

### A. Summary Judgment Standard

The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. Under Fed.R.Civ.P., Rule 56(c), made applicable in bankruptcy by Fed.R.Bankr.P., Rule 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P., Rule 56(c); *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir.2010). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrates that there is no genuine issue of material fact. *In re Edgardo*

*Ryan Rijos & Julia E. Cruz Nieves v. Banco Bilbao Vizcaya & Citibank*, 263 B.R. 382, 388 (1st Cir. BAP 2001). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Borges*, 605 F.3d at 5. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.* at 4. The court must view the evidence in the light most favorable to the nonmoving party. *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 26 (1st Cir.2004). Therefore, summary judgment is "inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." *Rijos*, 263 B.R. at 388.

Although this perspective is favorable to the nonmoving party, she still must demonstrate, "through submissions of evidentiary quality, that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir.2006). Moreover, "[o]n issues where the nonmovant bears the ultimate burden of proof, [she] must present definite, competent evidence to rebut the motion." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). These showings may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). But, the evidence offered by the nonmoving party "cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial." *Id. See also Horta v. Sullivan*, 4 F.3d 2, 7–8 (1st Cir.1993) (the materials attached to the motion for summary judgment must be admissible and usable at trial.) "The mere existence of a scintilla of evidence" in the nonmoving

party's favor is insufficient to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *González–Piña v. Rodríguez*, 407 F.3d 425, 431 (1st Cir. 2005).

In the summary judgment motion presently before the court, Defendant argues that there are no genuine issues as to any material facts and that therefore the moving party is entitled to judgment as a matter of law. Defendant provided employer sponsored monthly health insurance plans for the employees of Debtor. Defendant billed Debtor by sending monthly invoices in advance of the date of payment, with payment due at the end of each month. In this instant adversary proceeding, Trustee seeks to set aside the November 2008 invoice payment made by Debtor. Defendant argues that because Debtor had a history of making late payments, such transfer cannot be avoided. Debtor's November 2008 payment was made 119 days late. This is the usual business relationship between Debtor and Defendant because monthly invoices were always accepted months late.[1] Debtor paid its November 1, 2008 invoice 119 days late on February 27, 2009. Because Debtor's payment history before and during the 90–day preference period demonstrates that the payment for the November 2008 invoice was "ordinary" for purposes of § 547(c)(2) consistent with prior course of dealing between the parties, such transfer cannot be avoided.

In opposition, Trustee argues that Defendant did not provide sufficient evidence because Defendant only produced a sworn statement by Defendant's employee. Trustee contends that such a statement only proves that the payment received by the Defendant in the preference period was outside of the contracted business terms, that the payment was received 119 days late, and that Defendant had received late payments varying from 7 to 248 days late. Trustee argues that such pattern does not present a normal course of business because Defendant fails to present evidence such as a statement of account or relevant copies of the invoice and checks. Summarily, Defendant argues that this summary judgment should be denied because at the very least, due to the lack of evidence, there is a genuine issue of material fact as to what constitutes the ordinary course of business between both parties.

After reviewing the Defendant's arguments, and the relevant law, this Court concludes that there are no genuine issues as to the material facts and that the moving party is entitled to judgment as a matter of law. In a motion for summary judgment, in order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense *or* demonstrate that the nonmoving party does not have sufficient evidence of an essential element to carry its ulti-

---

1. In 2006, all of Debtor's payments were late, the latest payment being 120 days late, and the least being 61 days late. In 2007, the latest payment was 248 days late and the least was 92 days late. In 2008, the invoice billed for January 1, 2008 was paid on May 2, 2008, exactly 123 days late. As of June 1, 2008, Debtor had made no further payments although it had continued to receive invoices. Shortly after, Defendant and the Debtor agreed to a payment plan for past due amounts up until June of 2008. The general terms of the payment plan were for PMC to make six monthly payments in the amount of $200,000.00 each, on consolidated present and past due monthly invoices, which would cover most arrears. Both parties completed the payment plan with a final payment on December 8, 2008. Debtor then normally resumed making late payments on monthly invoices as it had before the payment plan.

mate burden of persuasion at trial. *Lopez v. Corporacion Azucarera de Puerto Rico,* 938 F.2d 1510, 1516–17 (1st Cir.1991); *High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563, 574 (9th Cir.1990). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. *Id.*

Therefore, if a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce any evidence, even to the extent that the nonmoving party would have the ultimate burden of persuasion at trial. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *High Tech Gays,* 895 F.2d at 574. With such scenario above, the nonmoving party can then defeat a summary judgment motion without producing any evidence. *See High Tech Gays,* 895 F.2d at 574; *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 607 (11th Cir.1991). On the contrary, if a moving party carries out its burden of production, the nonmoving party must produce evidence to support its claim or defense. *See High Tech Gays,* 895 F.2d at 574; *Cline v. Industrial Maintenance Eng'g. & Contracting Co.,* 200 F.3d 1223, 1229 (9th Cir.2000). Therefore, if the nonmoving party fails to produce sufficient evidence to create a genuine issue of material fact, the moving party prevails in the motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Alternatively, if the nonmoving party produces sufficient evidence to establish a genuine

issue of material fact, the nonmoving party defeats the motion. *See id.*

## B. Preferential Transfers

The question the court must answer is whether Debtor's payment of $77,088.00 deposited by the Defendant on February 27, 2009 constitutes an avoidable transfer. *See e.g., In re PMC Mktg. Corp.,* 09–02048, 2013 WL 3367500 (Bankr.D.P.R. July 5, 2013).

In order for payments to be recoverable as preferential transfers, such payments must satisfy all of the requirements of 11 U.S.C. § 547(b). The Plaintiff bears the burden of proving the transfers were: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such Transfers were made; (3) made while the debtor was insolvent; (4) on or within ninety (90) days before the date of filing of the petition; and (5) enabled the benefited creditor to receive more than such creditor would have received had the case been a chapter 7 liquidation and the creditor had not received the transfer. 11 U.S.C. § 547(b). This Court is satisfied per the evidence provided by the Plaintiff that Debtor's payments to Defendant meet the criteria of § 547(b), and therefore are preferences as defined by the Code. *Id.*

### i. Ordinary Course of Business

Defendant argues that, even if it had received preferential payments, those payments fall under the "ordinary course of business" exception found in 11 U.S.C. § 547(c)(2) that thus makes these payments unrecoverable by the Trustee. Section 547(c)(2) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), provides that:

(c) The trustee may not avoid under this section a transfer

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, *and* such transfer was;

    (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; *or*

    (B) made according to ordinary business terms.

(emphasis added). 11 U.S.C. § 547(c)(2); 11 U.S.C. § 547(g); *In re Healthco Int'l, Inc.*, 132 F.3d 104, 109 (1st Cir.1997); *In re PMC Mktg. Corp.*, 09–02048, 2013 WL 3367500 (Bankr.D.P.R. July 5, 2013); *Advo–System, Inc. v. Maxway Corp.*, 37 F.3d 1044, 1047 (4th Cir.1994); *Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.)*, 25 F.3d 728, 732 (9th Cir.1994); *Jones v. United Sav. & Loan Ass'n (In re U.S.A. Inns of Eureka Springs, Ark., Inc.)*, 9 F.3d 680, 682 (8th Cir.1993). This Congressional statutory change in BAPCPA established that creditors no longer had to meet all three prongs under § 547(c)(2), but merely the first and second prongs [2] *or* the first and third prongs.

■ The ordinary course of business exception thrives from the core of bankruptcy preference law. As such, this exception cries to strike a dragon-fly landing-like balance between shielding payments received by creditors to the extent that those creditors who remain committed to a debtor during times of financial distress, and maintaining an elastic area of flexibility to creditors in dealing with the debtor so long as the steps taken are consistent with customary practice among specific industry participants. Congressional records are consistent with this interpretation as they reveal that the purpose of this exception is to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or [its] creditors during the debtor's slide into bankruptcy." H.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 6329.

■ Sections 547(c)(2) and 547(c)(2)(A) in relevant part, state that: "The trustee may not avoid under this section a transfer to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business *or* financial affairs of the debtor and the transferee and such transfer was—(A) made in the ordinary course of business or financial affairs of the debtor and the transferee." Under the first two prongs of §§ 547(c)(2) and 547(c)(2)(A), Defendant needs to demonstrate, by a preponderance of the evidence, that the specific transaction was ordinary as between the parties. *Daly v. Radulesco (In re Carrozzella & Richardson)*, 247 B.R. 595, 603 (2d Cir. BAP 2000); *see also In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 459 (Bankr.S.D.N.Y.2007) (stating that the subjective test focuses solely on the prior dealings of debtor and creditor). So while a late payment is usually nonordinary, the defendant can rebut this presumption if late payments were the standard course of dealing between the parties. *See id.* (*quoting* 5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 504.04[2][ii], at 547–55 (16th ed. 2010) ("COLLIER")). In determining whether a transfer satisfies the requirements of § 547(c)(2)(A), courts examine several factors including "(i) the prior course of dealing between the parties,

---

**2.** For the purpose of the analysis, § 547(c)(2) is the "first prong," § 547(c)(2)(A) is the "second prong," and § 547(c)(2)(B) is the "third prong."

(ii) the amount of the payment, (iii) the timing of the payment, (iv) the circumstances of the payment, (v) the presence of unusual debt collection practices, and (vi) changes in the means of payment." *Buchwald Capital Advisors LLC v. Metl-Span I., Ltd. (In re Pameco Corp.),* 356 B.R. 327, 340 (Bankr.S.D.N.Y.2006); *Official Comm. of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Servs. (In re 360networks (USA) Inc.),* 338 B.R. 194, 210 (Bankr.S.D.N.Y.2005); *see also Hassett v. Goetzmann (In re CIS Corp.),* 195 B.R. 251, 258 (Bankr.S.D.N.Y. 1996); *In re PMC Mktg. Corp.,* 09–02048, 2013 WL 3367500 (Bankr.D.P.R. July 5, 2013).

■■■ To a certain extent, Defendant must establish a "baseline of dealings" between the parties to "enable the court to compare the payment practices during the preference period with the prior course of dealing." *In re Fabrikant & Sons, Inc.,* 2010 WL 4622449, at *3; *Cassirer v. Herskowitz (In re Schick),* 234 B.R. 337, 348 (Bankr.S.D.N.Y.1999); *In re PMC Mktg. Corp.,* 09–02048, 2013 WL 3367500 (Bankr. D.P.R. July 5, 2013). Defendant therefore must "demonstrate some consistency with other business transactions between the debtor and the creditor." *Id.* at *3. Summarily, this Court would have to engage in a comparison of the average number of days between the invoice and payment dates during the pre-preference and preference periods. *In re Quebecor World (USA), Inc.,* 08–10152 SHL, 491 B.R. 379 (Bankr.S.D.N.Y.2013); *Also see In re Fabrikant & Sons, Inc.,* 2010 WL 4622449, at *4.

■■■ Defendant, in this instant case, submitted a sworn testimony demonstrating the following:

| Payment Year | 2006 | 2007 | 2008 |
|---|---|---|---|
| Least late payment | 120 days late | 248 days late | 123 days late |
| Most late payment | 61 days late | 92 days late | Not applicable |

As seen in the chart above, in 2006, all of Debtor's payments were late, the latest payment being 120 days late, and the least being 61 days late. In 2007, the latest payment was 248 days late and the least was 92 days late. In 2008, the invoice billed for January 1, 2008, was paid on May 2, 2008, exactly 123 days late. On February 27, 2009, Debtor paid its November 1, 2008 invoice exactly 119 days late. In comparing the three years altogether, this Court observes that payment practices during the preference period is consistent with Defendant's argument that there is sufficient evidence demonstrating a late prior course of dealing with the Debtor. Suffice it to say, a baseline of dealing has been established.

■■■ For Circuit guidance purposes, this Court will proceed to examine case law interpreting § 547(c)(2)(B). Unlike, § 547(c)(2) and § 547(c)(2)(A), which the interpretation relies on the proof of the parties' own dealings, § 547(c)(2)(B) has an objective element which requires reference to some external datum. A survey of circuit case law reveals that the majority of the Circuit Court of Appeals with the exception of the Eleventh Circuit Court of Appeals[3] concluded that the "ordinary

---

**3.** *See Marathon Oil Co. v. Flatau (In re Craig Oil Co.),* 785 F.2d 1563, 1566–67 (11th Cir. 1986) (The Eleventh Circuit adopted the conduct of the parties standard instead of the objective inquiry adopted by the other Circuits. The conduct of the parties standard observes the conduct of the parties themselves to determine if the terms of a preferential transfer are ordinary).

business terms" meaning is to be held broadly to customary terms and conditions used by other individuals in the same industry witnessing exact or similar problems. *In re Roblin Industries, Inc.,* 78 F.3d 30, 39 (2nd Cir.1996) (collecting cases). Such conduct between the debtor and the creditor should be held objectively in light of the industry practices. Therefore, "only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection [B]." *In re Tolona Pizza Products Corp.,* 3 F.3d 1029, 1033 (7th Cir.1993). This interpretation is in line with the Congressional legislative history as it reveals:

> The purpose of the preference section is two-fold. First, by permitting the trustee to avoid pre-bankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during [its] slide into bankruptcy. The protection thus afforded the debtor often enables [it] to work [its] way out of a difficult financial situation through cooperation with all of [its] creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of [its] class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before

bankruptcy furthers the second goal of the preference section—that of equality of distribution. H.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6138.

■ This Court agrees with the objective standard that 11 U.S.C. § 547(c)(2)(B) mandates, i.e. that a payment for which a creditor seeks the protection of the ordinary course of business exception falls within the ordinary practice of others similarly situated within the same industry.

■ Having established this objective standard under § 547(c)(2)(B), "ordinary business terms" must include those terms employed by similarly situated debtors and creditors facing the same or similar situations. Therefore, if the terms in question are ordinary for industry participants under financial distress, then that is ordinary for the industry. This objective standard serves a protective function to which a creditor that agrees to restructure a debt in a manner consistent with industry practice in those circumstances would not lose the benefit of such exception. Such objective standard also serves a dual policy function in which an industry creditor acting in a specific manner would not be viewed as performing an unusual practice when such creditor does no more than follow usual industry practice—precisely the kind of behavior the ordinary course of business exception was intended to protect; would lessen the restriction a creditor would experience in courses of action typical in untroubled times in order to allow room for realistic debt workouts and would not unfairly penalize those creditors who take conventional steps to institute a repayment plan. *See In re U.S.A. Inns of Eureka Springs, Arkansas Inc.,* 9 F.3d 680 at 682–86.

In this instant case, Defendant presented sufficient evidence to meet the requirements of §§ 547(c)(2) and 547(c)(2)(A) therefore, this Court will not delve unnecessarily into the facts that would have been applied to an analysis of § 547(c)(2)(B). This Court notes that Trustee's argument on the best evidence

rule has no merit here as the Defendant has to meet preponderance of evidence standard to which this Court simply balances the probabilities that the proposition is more likely to be true than not.

### III. Conclusion

Summarily, the primary inquiry this Court must decide first is whether Defendant, as the moving party, carried its initial burden of production and accordingly whether the Plaintiff, as the nonmoving party, had an obligation to produce evidence in response. The Supreme Court provided for such analytical framework in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court, under *Adickes* and *Celotex*, offered guidance that a moving party without the ultimate burden of persuasion at trial may regardless carry its initial burden of production by either of two methods: the moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. In practice, the first method mentioned above or the *Adickes* method, may be more commonly employed because the moving party may find it easier to produce affirmative evidence negating an essential element of the nonmoving party's claim or defense than it is to show that the nonmoving party has insufficient evidence to carry its ultimate burden of persuasion at trial. Regardless, the second or the *Celotex* method, is equally favored legally, where in appropriate cases, a moving party can carry its initial burden of production by demonstrating that the nonmoving party does not have enough evidence to carry its ultimate burden of persuasion at trial.

In this instant case, Defendant successfully carried out the burden as mandated by *Adickes*. Defendant succeeded in producing evidence negating an essential element of the nonmoving party's Opposition. Because either *Adickes* or *Celotex* are plausible in meeting the requirements or prevailing in a summary judgment motion, this Court will not evaluate this motion based on the *Celotex* standard as well. Therefore, Defendant presented sufficient evidence to demonstrate that there are no genuine issues of fact in dispute for a trial.

WHEREFORE, IT IS ORDERED that Defendant's Motion for Summary Judgment shall be, and it hereby is, GRANTED. Clerk to enter Judgment dismissing the Complaint, and close this adversary.

SO ORDERED

